Tova Indritz, Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Patricia A. Gandert, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., Patricia Frieder, Asst. Atty. Gen., on the brief), Santa Fe, N.M., for respondents-appellees.

Before McKAY and BRORBY, Circuit Judges, and BOHANON,* District Judge.

**Jose Vincent REYES, Petitioner–Appellant,**

v.

**Santos QUINTANA, Warden; Attorney General for the State of New Mexico, Respondents–Appellees.**

No. 87–1673.

United States Court of Appeals, Tenth Circuit.

Aug. 2, 1988.

BRORBY, Circuit Judge.

Jose Vincent Reyes appeals from an order of the United States District Court for the District of New Mexico dismissing a habeas corpus petition challenging the constitutionality of his enhanced sentence. We AFFIRM.

### Background

Appellant was charged in the Eleventh Judicial District Court, Gallup, New Mexico, with first degree murder as a result of the shooting death of his former girlfriend, Theresa Hernandez. The case was tried to a jury. The trial court instructed the jury on first and second degree murder.[1]

---

* The Honorable Luther L. Bohanon, Senior United States District Judge for the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

1. The court instructed the jury that the elements of first degree murder were as follows:

For you to find the defendant guilty of first degree murder by a deliberate killing as charged, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed THERESA HERNANDEZ;

The jury convicted Mr. Reyes of second degree murder rather than first degree murder. Immediately following the pronouncement of the jury's verdict, the judge sentenced Mr. Reyes to nine years imprisonment plus one year as a consequence of the jury's finding that the crime was perpetrated with a firearm, plus three years under a New Mexico enhancement provision based on aggravating circumstances, for a total of thirteen years of imprisonment to be followed by two years of parole.

The statutory authority for the three-year enhancement is N.M.Stat.Ann. § 31–18–15.1 (1980 Cum.Supp.), which provides as follows:

A. The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aid it in reaching a decision. The court may alter the basic sentence as prescribed in Section 31–18–15 NMSA 1978 upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender. If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record of the case.

B. The judge shall not consider the use of a firearm or prior felony conviction as aggravating circumstances for the purpose of altering the basic sentence.

C. The amount of the alteration of the basic sentence for noncapital felonies shall be determined by the judge. However, in no case shall the alteration exceed one-third of the basic sentence.

Before pronouncing sentence, the judge gave both counsel opportunity to address the court. Neither counsel produced witnesses or evidence. Each made a brief statement to the court. The entire hearing through imposition of sentence is as follows:

THE COURT: All right, defense counsel will approach the bench with his client, please, and the State of New Mexico.

Mr. Reyes, the jury has found you guilty of murder in the second degree, and they also have found that you committed the crime with the use of a firearm.

*The court has heard the circumstances surrounding the commission of the offense.* Does the state wish to show anything in aggravation?

MR. ARAGON: Your honor, the state feels that the facts speak for themselves surrounding not only the evening of the shooting itself, but, also, the preceding days and, also, to some extent, the preceding months. And we feel that this is a case where aggravation should be considered.

THE COURT: Does the defendant wish to show anything in mitigation?

MR. CURTIS: Your Honor, other than the testimony regarding the defendant's psychological condition and the use of alcohol, I would add but one thing, and that is the defendant has no criminal

---

2. The killing was with the deliberate intention to take away the life of THERESA HERNANDEZ;

3. This happened in New Mexico on or about the 12th day of August, 1981.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a crime.

The court instructed the jury that the elements of second degree murder were as follows:

For you to find the defendant guilty of second degree murder as charged, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed THERESA HERNANDEZ;

2. The defendant knew that his acts created a strong possibility of death or great bodily harm to THERESA HERNANDEZ;

3. This happened in New Mexico on or about the 12th day of August, 1981.

record, has never been convicted of a felony in his life.

THE COURT: Well, as I indicated, the court has listened to all of the testimony and is cognizant of the *facts and circumstances surrounding the commission of this offense.* And I am of the opinion that there are some aggravating circumstances which would justify this court in enhancing the penalty that would normally be imposed. The basic sentence is nine years. And since there was a finding by the jury that a firearm had been used in the commission of the offense, it carries with it an additional penalty of one year, which would make it the basic sentence plus the one year firearm enhancement, a sentence of ten years.

The aggravating *circumstances* which the court finds is *the manner in which the defendant pursued the victim,* the manner in which the defendant broke into the victim's house, *the statements of the defendant made in regard to his relationship with the victim,* the fact that there was alcohol involved and, in my opinion, the total disregard of this defendant in discharging a firearm in the manner in which he did it.

Based on those *circumstances,* the court's going to find that the penalty to be imposed in this case be enhanced by one third or a period of three years.

It is, therefore, Mr. Reyes, the judgment and sentence of the court that you be committed to the custody of the Department of Corrections for a period of thirteen years and that you will be confined in a facility operated by the Department of Corrections for that period of time. (Emphasis added.)

Mr. Reyes filed an untimely appeal with the New Mexico Court of Appeals. The court dismissed the appeal. Pursuant to 28 U.S.C. § 2254 (1976), he then filed a Petition for a Writ of Habeas Corpus in federal district court claiming the state trial judge's sentencing decision exposed him to double jeopardy in violation of the Fifth Amendment. He contended that in referring to "the manner in which the defendant pursued the victim" and "the statements of

the defendant made in regard to his relationship with the victim," the judge reinjected the issue of premeditation into the sentencing phase of the process and punished the defendant based upon a factual finding which the jury had rejected.

The United States District Court concluded that Mr. Reyes had exhausted all remedies available to him under state law. Although the district court found and concluded that he had defaulted procedurally as a result of his initial decision to bypass a direct appeal, the district court chose to exercise its discretion under *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963), and address the merits. On review of the Petition for a Writ of Habeas Corpus, the United States District Court found Mr. Reyes' construction of the trial court's remarks "strained," and stated:

Those remarks are more properly understood as (1) the trial court's consideration of the fact that Petitioner's act, although not the product of deliberation, was certainly more culpable than a single reflexive jerking of the trigger, and (2) the trial court's consideration of Petitioner's vindictive, antisocial character. These factors were clearly relevant to Petitioner's potential for rehabilitation and the danger Petitioner poses to society. The trial court's consideration of these factors did not reintroduce the issue of deliberation. Petitioner's double jeopardy claim is without merit.

Mr. Reyes now appeals the district court's dismissal of his Petition.

Appellant seeks reversal of the district court order dismissing his Petition for a Writ of Habeas Corpus, and also seeks vacation of the enhanced portion of his sentence. We shall consider and dispose of the merits of Mr. Reyes' claims.

### Double Jeopardy and Collateral Estoppel

Appellant phrases the central issue as follows: Did the trial judge violate Mr. Reyes' rights under the Double Jeopardy Clause when he increased the sentence based on findings of fact contrary to those

necessarily made by the jury? By this statement of the issue, appellant presumes that the trial judge reinjected the issue of deliberation into the sentencing proceeding. For the reasons discussed herein, appellant's factual and legal contentions are not well-founded.

The trial record demonstrates that the judge reasonably found "pursuit" based upon the testimony of the defendant alone. Mr. Reyes pursued Ms. Hernandez by repeatedly seeking and following her. The defendant testified that he and the deceased lived together in Idaho for approximately four years. Ms. Hernandez terminated that relationship and moved to New Mexico to attend school. While in New Mexico, she did not contact the defendant. She did not give the defendant her address, but he obtained it from the City of Gallup Electric Company. Uninvited, he traveled to New Mexico from Wyoming, and tried to reconcile with her.

The defendant further testified that Ms. Hernandez was surprised to see him. He explained how she drove him to Albuquerque to help him catch a bus and then had him removed from her vehicle by a police officer. The defendant then returned to Gallup to retrieve the gun he had given to Ms. Hernandez. He again went to Albuquerque, cashed in a bus ticket, and returned to Gallup to try once again to speak with the victim. The three trips to Gallup occurred within a week of the murder. On the third trip to Gallup, the defendant arranged for a mental health counselor to meet with them. The counselor told the defendant that Ms. Hernandez did not wish to reconcile with him.

On the date of the murder, the defendant walked to Ms. Hernandez's home and did not find her. Later he telephoned her and she hung up on him. He then looked for his gun and went to her home "to try to reconciliate." She refused to open the door. He pushed his fist through the glass in the door and walked into her home. Mr. Reyes, Ms. Hernandez, and her roommate, Colleen Williams, then went outside. Ms. Hernandez ran. The defendant fired six shots as his victim tried to flee. All of these facts are established by the defendant's testimony alone.

The record also establishes a factual basis for the existence of statements made by the defendant. The defendant admitted at trial that he wrote a note to Ms. Hernandez stating, "Taking a life is easier than living it," and that he wanted to get her attention and her sympathy. Another witness, Maureen Reardon, testified that she knew the defendant and the deceased in Idaho. She recalled the defendant stating at a wedding reception in May, 1981, "If I can't have her, no one can." Another witness, Charlotte Laqueer, testified that the defendant stated: "If I can't have her nobody else can ... I could kill her." Yet another witness, Maxine Rais, testified that at the same wedding reception the defendant stated: "Maxine, I'm going to find Theresa," and "I'm going to get her." She further testified that she perceived the defendant's statement as an angry threat. Upon cross-examination, the defendant indicated he was being persistent in his attempts to reconcile with his victim.

There can be no serious question that factually the defendant pursued his victim, and that he made statements as referred to by the judge. Even if the jury found that Mr. Reyes did not pursue Ms. Hernandez with the intent to kill her, or found that he was not legally responsible for first degree murder, the record supports the judge's findings. The finding of pursuit is not tantamount to a finding of a deliberate intention to kill, an element of first degree murder. The only question which arises is whether the use of these facts as aggravating factors amounts to constitutional error. We hold that the trial judge's consideration of these facts in enhancing the sentence does not constitute a violation of rights under the Double Jeopardy Clause.

The law is well settled that the Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) mul-

tiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Appellant cites *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), for the proposition that a jury verdict of guilty of second degree murder constitutes an acquittal of the first degree murder charge. He contends that the sentencing judge is collaterally estopped from considering an element of a charge on which the defendant was acquitted: deliberate intention to kill. Our opinion does not reach the collateral estoppel issue for the reason that the record demonstrates the trial judge did not consider the element of deliberation in the sentencing phase of the proceeding.

We agree with the district court that in enhancing the sentence the judge properly considered the defendant's culpability and character. In *State v. Segotta,* 100 N.M. 498, 501, 672 P.2d 1129, 1132 (1983), the New Mexico Supreme Court reviewed the state enhancement provision and set forth proper factors to consider:

> [S]ome of the factors which a trial court *may* consider and weigh as mitigating or aggravating circumstances in sentencing pursuant to Section 31–18–15.1 are: unusual aspects of the defendant's character, past conduct, age, health, any events surrounding the crime, pattern of conduct indicating whether he or she is a serious threat to society, and the possibility of rehabilitation. However, we do not limit a trial court to these factors.

We are bound by the state interpretation of the language of its statutes and the legislative intent behind them. *Cordova v. Romero,* 614 F.2d 1267, 1269 (10th Cir.), *cert. denied* 449 U.S. 851, 101 S.Ct. 142, 66 L.Ed.2d 63 (1980). Obviously the New Mexico enhancement provision provides for broad inquiry into the circumstances of the crime and the background of the offender.

Appellant seriously confuses the process of proving elements with that of weighing circumstances. This is not a case where the defendant was subjected to post-acquittal fact-finding proceedings going to guilt or innocence in violation of the Double Jeopardy Clause as in *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986). This is not even a case where a judge enhanced a sentence after considering facts surrounding an acquittal in a prior trial, as in *United States v. Plisek,* 657 F.2d 920 (7th Cir.1981). Although the appellant speculates to the contrary, the record bears no indication that in enhancing the sentence the judge relied upon a finding of deliberate intention to kill. When a sentencing judge enhances a sentence based upon circumstances factually supported in the record, and those circumstances constitute proper factors to consider under the enhancement statute, this court will not presume improper motive in imposing sentence.

### Conclusion

The district court read the state trial judge's consideration of aggravating factors as events surrounding the crime, the defendant's character, pattern of conduct indicating whether the defendant is a serious threat to society, and the defendant's prospects for rehabilitation. The district court reasonably construed the state trial judge's comments, and properly found them to have a lawful basis. We agree with the district court that the appellant's interpretation of the trial judge's findings is "strained," and the double jeopardy argument is without merit. We find no reversible error in the district court proceedings.

We AFFIRM the judgment of the district court denying Mr. Reyes' Petition for a Writ of Habeas Corpus.