**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**MacArthur Martin BRYANT,**
**Defendant–Appellant.**

**No. 88–1836.**

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 1989.

---

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Paula G. Burnett, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., Albuquerque, N.M., was also on the brief) for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and McKAY and EBEL, Circuit Judges.

HOLLOWAY, Chief Judge.

Defendant–Appellant Bryant appeals his conviction for involuntary manslaughter. 18 U.S.C. § 1112. Bryant argues that (1) the district court abused its discretion by failing to define adequately for the jury the term "wanton or reckless disregard for human life" as an element of involuntary manslaughter, and (2) the court violated his rights under the Double Jeopardy Clause when it based its sentence of Bryant on a view of the evidence that was contrary to that found by the jury. We affirm.

I.

The killing for which Bryant was prosecuted took place during the summer of 1987 on the Navajo reservation in the Chuska Mountains near Sand Springs, New Mexico. On the night of July 25, 1987, Oscar Wood and his brother Ervin Wood— distant clan relations of Bryant—went to the home of Roy Wood, the defendant's half-brother. Oscar and Ervin Wood had a flat tire and, according to the testimony of Oscar, the Wood brothers hoped to borrow an air pump from Roy Wood. At Roy's home, Oscar, Ervin and Roy quarrelled and in an ensuing fight, Roy was badly beaten. After making his way to Bryant's home shortly thereafter, Roy told his half-brother what had happened. The defendant then went with his wife in his truck to seek help for Roy at a nearby gathering.

En route, on a narrow mountain road, Bryant came upon the Wood brothers, driving their car with its flat tire. Both Bryant and the Woods stopped. Bryant left his truck, holding a damaged rifle[1] that he ordinarily used to patrol the vicinity for a bear which threatened local livestock. The defendant stood before the Woods' driver's side window with the purpose, according to his testimony, of determining what had caused the fight that had occurred earlier that evening. III at 264. At this point, there is a conflict as to what transpired. Oscar testified that after a short exchange of words, Bryant simply discharged his rifle at Ervin. According to Bryant, however, Ervin grabbed the rifle after the exchange of words and in the struggle, the rifle—with its damaged firing mechanism—accidentally discharged. It is undisputed that the bullet from the rifle mortally wounded Ervin and then struck Oscar in the shoulder.

II.

The resulting indictment charged the defendant with two criminal counts: (1) the second degree murder of Ervin Wood in violation of 18 U.S.C. § 1153 (offenses committed within Indian country) and 18 U.S.C. § 1111(a) and (b) (murder) and; (2) the assault of Oscar Wood with a dangerous weapon in violation of 18 U.S.C. § 113(c).

After hearing the testimony of twenty-two witnesses, including experts on ballistics and pathology, the jury acquitted the defendant of both the second degree murder of Ervin and the assault with a danger-

---

1. Expert and nonexpert testimony suggested that damage to the rifle's firing mechanism may have made it more likely that the weapon would discharge accidentally.

ous weapon on Oscar, and convicted Bryant of the lesser included offense of the involuntary manslaughter of Ervin, in violation of 18 U.S.C. § 1112. The trial judge sentenced Bryant to three years' incarceration, a $50 special assessment, and ordered $1,988 in restitution to be paid by the defendant for Ervin's widow. The three-year prison term is the maximum incarceration allowable under 18 U.S.C. § 1112(b), although a possible fine of up to $1,000 was not imposed.

Bryant appeals, seeking reversal of his conviction and remand for a new trial, or alternatively vacation of his sentence and imposition of a new sentence.

## III.

### A. The jury instructions

The defendant argues that the district court abused its discretion in its instructions regarding the lesser included offense of involuntary manslaughter. Although the charge recited the five elements of the involuntary manslaughter offense along with the definition of the crime set forth in the United States Code, Bryant contends that the court committed reversible error by failing to define "wanton or reckless disregard for human life" and by failing to give his proposed instructions J and K, which purported to explain the circumstances the jury could consider in deciding whether Bryant had acted with "wanton and reckless disregard for human life." We cannot agree that the court's instructions pertaining to involuntary manslaughter constituted an abuse of discretion or that the instructions were in error.

■ As we explained in *United States v. Pack*, 773 F.2d 261 (10th Cir.1985): "Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *Id.* at 267; *accord, United States v. Pinto*, 838 F.2d 426, 435–36 (10th Cir.1988); *United States v. Scafe*, 822 F.2d 928, 932 (10th

Cir.1987); *United States v. Lofton*, 776 F.2d 918, 919–20 (10th Cir.1985). A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis. *See Scafe*, 822 F.2d at 932; *United States v. Troutman*, 814 F.2d 1428, 1451 (10th Cir.1987). Nor is a defendant entitled to any specific wording of instructions. *United States v. Hoffner*, 777 F.2d 1423, 1426 (10th Cir.1985); *United States v. Lisko*, 747 F.2d 1234, at 1238 (8th Cir.1984). Our inquiry here, therefore, is whether the failure to define the phrase "wanton and reckless disregard for human life" and the rejection of proposed instructions J and K, left untreated a theory of defense finding support in the evidence and the law. *Scafe*, 822 F.2d at 932; *Lofton*, 776 F.2d at 919–20. *See also United States v. Hunt*, 794 F.2d 1095, 1097 (5th Cir.1986) ("an abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense").

■ Jury Instructions 14A–14C as given show that the court did not err. The jury was clearly instructed that if the prosecution failed to establish guilt of second degree murder beyond a reasonable doubt, the jurors should consider the defendant's guilt or innocence of involuntary manslaughter. Jury Instructions 14A, 14B. Moreover, the instructions set forth both the statutory definition of involuntary manslaughter, Jury Instruction 14B, and the five elements that the government must prove to convict a defendant of the offense, Jury Instruction 14C. Although the jury requested a definition of "wanton and reckless disregard for human life" during its deliberations, it has not been demonstrated to our satisfaction that the court's decision to have the jury apply the common understanding of the "wanton and reckless" element left the jury with insufficient guidance. These terms are commonplace. Moreover the charge was sufficient to encompass the legally and factually arguable defense theories, *i.e.*, that the killing of Ervin Wood was not second degree murder and instead was no crime at all or merely

involuntary manslaughter.[2]

Defendant's case is distinguishable from cases such as *United States v. Lofton,* 776 F.2d 918 (10th Cir.1985),[3] where a defendant's conviction for second degree murder was reversed because the trial court had failed to instruct correctly on the defendant's heat of passion defense. *Lofton* at 919–22. There the defendant relied solely on the heat of passion defense, *id.* at 921, and presented the theory adequately at trial. *Id.* at 919. The factual finding on the specific question whether the defendant had killed her victim in the heat of passion, given the facts of her case and her reliance on the *mens rea* defense, should have been substantially determinative of whether she would be convicted of murder or of involuntary manslaughter. *Id.* at 920. Yet the trial court in the instructions failed to state clearly that heat of passion was a defense to murder and failed to distinguish the mental state consistent with second degree murder from that consistent with involuntary manslaughter. *Id.* at 921–22.

Here the court's instructions clearly delineate the *mens rea* elements at issue. Jury Instructions 10 (providing statutory definition of murder including the element of malice aforethought), 11 (stating the four elements of the second degree murder offense including malice aforethought), and 12 (specifically defining malice aforethought in two paragraphs as willful intent to take a human life) constitute three interrelated statements that malice aforethought—the willful intent to kill someone—must be established in order to convict for murder. Instruction 14B (statutory definition of involuntary manslaughter) specifically states that involuntary manslaughter is a killing "without malice" and Instruction 14C states that a necessary element of involuntary manslaughter is acting with wanton or reckless disregard for human life. *Id.* These instructions are adequate for the purpose of permitting the jury to consider whether Bryant had the requisite mental state for murder, involuntary manslaughter, or no crime at all.

■ Regarding the court's decision to reject proposed Instructions J[4] and K,[5] we note that these instructions were ostensibly proposed in order to amplify the court's explanation of those factors the jury should consider in evaluating the defendant's guilt or innocence of involuntary manslaughter with references to the trial testimony. To the extent that proposed instructions J and K relate to involuntary manslaughter, we believe that the district court was within its discretion to reject these proposed "amplifications," *see Troutman,* 814 F.2d at 1451, since the involuntary manslaughter defense was adequately set forth in the instructions the jury actually received. Jury Instructions 14A–14C. The proposed instructions bear little relation to involuntary manslaughter and they appear to introduce a self-defense or "right to arm" theory. Thus the court's refusal of the proposed instructions was within its sound discretion.

There is nothing in the record indicating that Bryant ever requested a self-defense

---

**2.** *See generally United States v. Lesina,* 833 F.2d 156, 160 (9th Cir.1987) ("An accidental killing may be second degree murder, manslaughter, or no crime at all.").

**3.** *See also United States v. Lesina,* 833 F.2d 156, 160 (9th Cir.1987) (applying *Lofton*-type analysis to trial errors and factual circumstances similar to those discussed in *Lofton* ).

**4.** Proposed Instruction J was as follows:
In determining whether or not the defendant is guilty of involuntary manslaughter, the jury must measure his conduct in arming himself before approaching Erwin [sic] and Oscar Wood against all of the existing circumstances and determine therefrom whether his actions [sic] was in its nature dangerous to life.
Some of the special circumstances you may consider in this case are the fight that had occurred earlier between Roy Wood and Erwin [sic] and Oscar Wood, that the defendant's knee is partially disabled, and that the defendant know [sic] about Erwin [sic] Woods' [sic] propensity for violence when drunk.
I R., Document No. 25.

**5.** The text of proposed Instruction K was as follows:
A person is justified in arming himself when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force.
I R., Document No. 25.

instruction. Moreover, a self-defense theory is inconsistent with the defense theory on which the defendant primarily relied. Bryant's defense at trial was, in essence, that Ervin's death resulted from the accidental discharge of the defendant's rifle (as a result of the struggle and the rifle's damaged firing mechanism) after the victim grabbed the rifle and pulled it toward him in his car. The jury was adequately instructed to consider this defense to the second degree murder charge. I R., Document No. 25, Jury Instructions 12, 14A–14C. There is no evidentiary basis in the record to support a self-defense theory, and therefore no obligation on the part of the court to instruct the jury on self-defense. *See Scafe*, 822 F.2d at 932–33.

As for the "right to arm" that Bryant appears to be positing in proposed instructions J and K, there is no substantial authority for the proposition that this alleged "right" bears a material relationship to the issue of guilt or innocence of involuntary manslaughter here. The defendant cites *United States v. Benally*, 756 F.2d 773, 776 (10th Cir.1985), for the proposition that " 'gross negligence is a necessary element of the crime of involuntary manslaughter.' " Appellant's Brief–in–Chief at 17. But, as the *Benally* case states, "[g]ross negligence is defined 'as wanton or reckless disregard for human life.' " *Benally* at 776. Since Instruction 14C specifically states that the government must prove that the defendant acted with a wanton or reckless disregard for human life, we cannot agree that the court's failure to instruct the jury further constituted error. If, as appears to be the case, the dispute is actually over the specific wording of the instruction, the trial court's discretion regarding the exact language of the charge is a matter of settled law. *See e.g., Hoffner*, 777 F.2d at 1426; *Lisko*, 747 F.2d at 1238; *United States v. Silverman*, 745 F.2d 1386, 1396 (11th Cir.1984).

In sum, we are satisfied that there was no error in the instructions given, nor in the refusal to give the further instructions requested.

### B. Sentencing

The defendant's remaining claim of error is that the trial court violated his constitutional rights under the Double Jeopardy Clause [6] by imposing a sentence that contravened the jury's verdict. Appellant's Brief in Chief at 22–26. Bryant cites statements by the trial judge to the effect that he was fortunate to be getting the sentence imposed, rather than what he would have gotten had the case been tried to the court alone. The pertinent portions of the sentencing transcript are reproduced in the Appendix to this opinion.

█ The offense involved here occurred on July 26, 1987. This was prior to the effective date of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, and thus the Sentencing Guidelines did not control the sentencing of the defendant Bryant. *United States v. Stewart*, 865 F.2d 115, 117 (7th Cir.1988). The Sentencing Reform Act, which "makes all sentences basically determinate," *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989), and the Guidelines promulgated by the Commission thereunder not being controlling, the earlier system of indeterminate sentencing, which "nearly always gave the sentencing judge wide discretion to decide whether the offender should be incarcerated and for how long," *Mistretta*, 109 S.Ct. at 650, applied here. Under that earlier system, as a general proposition, once it was determined that a sentence was within the limitations set forth in the statute, appellate review was at an end. *Dorsynski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). And by statute, no limitation was placed on the information which a federal court could receive and consider concerning the background, character and conduct of a person convicted of an offense. *See* 18 U.S.C. § 3577 (1970); *United States v. Tucker*, 404 U.S.

---

**6.** U.S. Const., amend. V ("[N]or shall any person be subject for the same offence to be twice put

in jeopardy of life or limb....").

443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949) (briefly discussing the Anglo–American history of sentencing).

There were, however, established rules regarding constitutional limitations narrowing the factors that a trial court was permitted to consider in imposing sentence. *See, e.g., Tucker*, 404 U.S. at 447–49, 92 S.Ct. at 591–93 (consideration in sentencing of prior convictions obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), constitutionally impermissible); *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) (sentencing based on consideration of "materially untrue" information is "inconsistent with due process of law"); *United States v. Shepard*, 739 F.2d 510, 515 (10th Cir.1984) (defendant "has a constitutional right to sentencing based on accurate information").

■ It is true that the trial judge here disagreed with the jury's resolution of the offense of which the defendant was found guilty. The judge stated that "the sentence I am going to give you, you're quite lucky to be getting rather than what you would have gotten had it been tried to the court alone." *Id.* Apparently the judge was thinking of a second degree murder conviction, 18 U.S.C. § 1111, under the indictment which could have carried imprisonment for any term of years or for life. § 1111(b). As it was, the maximum sentence for the lesser included offense of involuntary manslaughter was a fine not to exceed $1,000 or imprisonment for not more than three years, or both. 18 U.S.C. § 1112(b).

Defendant Bryant here relies on *United States v. Campbell*, 684 F.2d 141, 154 (D.C. Cir.1982), and the court's statement that "a judgment of acquittal is a more final and binding determination of facts than the requisite standard of proof might at first seem to allow." However, the *Campbell* opinion upheld a sentence which was challenged for the trial court's failure to give proper effect to a jury's acquittals in a prosecution under the RICO statute, the conspiracy statute, and for the giving and receiving of bribes. 18 U.S.C. § 201(b) and (c). Despite the statement in that opinion relied on by defendant Bryant here, the trial judge was upheld in *Campbell* although he stated, 684 F.2d at 152, that he could properly refer to evidence introduced with respect to crimes for which the defendant was acquitted, relying on *United States v. Sweig*, 454 F.2d 181 (2d Cir.1972). The trial judge referred in *Campbell* to testimony from a witness, which he said was untruthful, the judge stating that the defendant there had been fortunate to escape conviction for some of the more serious charges.

Although we have not specifically addressed a double jeopardy claim like that before us here, our decisions in similar appeals provide no substantial support for Bryant's position. In *Reyes v. Quintana*, 853 F.2d 784 (10th Cir.1988), we rejected a constitutional challenge similar to the one raised here by defendant Bryant. Reyes had been tried in a New Mexico state court for first degree murder and was convicted by a jury of second degree murder. The state trial court imposed a sentence of 10 years for second degree murder and an additional three years was added to the sentence under a state statute based on the aggravating circumstance of the defendant's having pursued the victim before murdering her. Concluding that there was a factual basis for the judge's finding of aggravating circumstances, we held that regardless of the jury's having acquitted the defendant of first degree murder, "... the trial judge's consideration of these facts in enhancing the sentence does not constitute a violation of rights under the Double Jeopardy Clause." *Reyes*, 853 F.2d at 787.

We cannot agree that Bryant presents a case of violation of the Double Jeopardy Clause in light of the opinions we have considered above. *See also Roussell v. Jeane*, 842 F.2d 1512 (5th Cir.1988); *United States v. Plisek*, 657 F.2d 920 (7th Cir. 1981). The reasoning of the Fifth Circuit in *Roussell*, 842 F.2d at 1524, is persuasive:

In this case, the court clearly believed that a second degree murder verdict would have been truer to the evidence than the manslaughter verdict which the jury returned. But the court did not incorrectly assume that the jury had convicted [defendant] Roussell of second degree murder—the court was well aware that Roussell stood convicted of manslaughter and could be sentenced only for that offense. Unlike the situation in *Tucker, Townsend,* and similar cases, the sentence was not based on a nonexistent or constitutionally invalid conviction.... We read the court's comments as indicating its view that Roussell's crime was as serious a manslaughter as could be imagined, and that any sentence short of the maximum *for manslaughter* would deprecate the gravity of Roussell's act. The court did not violate the Constitution in 'acknowledging the impact of the evidence presented at trial,' *Campbell,* 684 F.2d at 184, because it did not incorrectly assume that Roussell had been convicted of, or could be sentenced for, second degree murder.

As in *Roussell,* here there is no suggestion that the trial judge considered nonexistent or constitutionally invalid prior convictions. Nor does the record suggest that the judge believed that any perceived "error" justified sentencing Bryant for second degree murder, rather than involuntary manslaughter. The court acted within its discretion in sentencing Bryant to the statutory maximum period of incarceration allowable for the offense of which he was convicted, and we hold that no violation of the Double Jeopardy Clause occurred.

We are not persuaded that any error occurred in the trial or sentencing of the defendant and the judgment and sentence are accordingly

AFFIRMED.

## APPENDIX

The pertinent portions of the Sentencing Transcript (V R. 482–489) are as follows:

MR. SCHOENBURG: I think if the jury found that the defendant pointed the gun at him, that would be an aggravated as-

sault. And if one commits a felony that results then in the negligent death of someone, you are not entitled to an involuntary manslaughter verdict. And they were instructed that it need be an unlawful act not amounting to a felony, that was the Court's Instruction 14–B, and to presume the logic, rational nature of the jury verdict, it certainly presumes against the defendant—

THE COURT: I don't assume that in this case. I think that was just a compromise verdict by the jury. It was a job of good lawyering on your part to come in with that verdict. Clearly when he got out of the truck with the gun out, and this scenario, as testified to by your client, to me was basically an impossibility.

MR. SCHOENBURG: Judge, I think that that—

THE COURT: Starting with when your client testified he found the—that's another case. Go ahead.

MR. SCHOENBURG: I think what the Court proposes here really presents a double jeopardy problem for my client, because the Court now is essentially reviewing the facts already decided by the jury, necessarily, as a matter of law, and I think—

THE COURT: There is no way that I can say that the jury found he never pointed the gun at him. It is just as believable that he pointed the gun at him and that he then—the deceased pushed it aside and that's how it went off.

MR. SCHOENBURG: That could not be as a matter of law, could not be involuntary manslaughter, because the discharge of the firearm would have been preceded by a felony, the aggravated assault, and that would not be involuntary manslaughter. And I think that we have to presume the rationality of the jury's verdict. They have considered those facts and made a decision.

I know the Court may not share their resolution of the factual disputes and of the testimony, but, nonetheless, I think that they were the triers of fact in this case and we have to presume the rationality of

their verdict, and I think my client is entitled to that, in the pre-sentence report.

THE COURT: Well, you can file whatever you want to with the Bureau of Prisons, but I'm not going to change the pre-sentence report.

.    .    .    .    .

THE COURT: All right. Mr. Bryant, I think you received excellent representation during your trial. The jury's verdict reflects, I think, what your counsel wanted to get across to them, and he did an excellent job.

Although you will not agree with this sentence, the sentence I am going to give you, you are quite lucky to be getting that rather than what you would have gotten had it been tried to the Court alone.

It will be the judgment and sentence of the Court that the defendant is committed to the custody of the Attorney General of the United States or his duly authorized representative for imprisonment for a term of three years.

Pursuant to the Victim and Witness Protection Act of 1982, the Court orders the defendant to make restitution in the amount of $1988.01, to be paid to the Department of Justice, during the time that he is on parole. This money is then to be paid to the victim's wife, Annabelle Wood, Box 1951 Sheep Springs, New Mexico.

A $50 special penalty assessment is hereby imposed. Voluntary surrender will be allowed.