UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony MERCHANT, Defendant–Appellant.

No. 92–3237.

United States Court of Appeals,
Tenth Circuit.

May 3, 1993.

Charles D. Anderson, Federal Public Defender, and Marilyn M. Trubey, Branch Chief, Federal Public Defender's Office, Topeka, KS, for defendant-appellant.

Lee Thompson, U.S. Atty., and Thomas G. Luedke, Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

Before BRORBY, BARRETT and EBEL, Circuit Judges.

BARRETT, Senior Circuit Judge.

Anthony Merchant appeals his jury conviction of possession of a prohibited object, cocaine, while an inmate in the United States Penitentiary at Leavenworth, Kansas.

Merchant was charged in a superseding indictment with possessing cocaine and attempting to introduce cocaine into a federal

penitentiary in violation of 18 U.S.C. §§ 1791(a), (a)(2) and (b)(1), and 18 U.S.C. § 2. The jury returned a verdict of guilty on the possession charge but not guilty on the charge of introducing cocaine into a federal penitentiary.

The Federal Public Defender was appointed to represent Merchant. Subsequent thereto, Merchant filed a motion requesting that the district court permit him to represent himself and proceed *pro se.* Following a hearing, during which the court spent a great deal of time explaining the intricacies that Merchant would encounter in the case and the pitfalls of self-representation, the court allowed the Federal Public Defender to withdraw and permitted Merchant to proceed *pro se.* The Federal Public Defender, however, was appointed to act as standby counsel.

The government's first three witnesses were Patrick Dennison, Lt. Glen Meadows Clark, and Bill Thomas. Dennison, a corrections officer at Leavenworth, testified that: he was assigned to the inmate visitation room on April 28, 1991, during which time Merchant visited with one Mary Alice Dossett for approximately four hours (R., Vol. 2, at 12–13); after Dossett left, Merchant was taken to a secured area and strip searched; and, during the course of the strip search, a round, grey object was discovered. *Id.* at 14. Lt. Clark, an officer with the Bureau of Prisons, testified that the object seized from Merchant contained cocaine. *Id.* at 33.

Thomas, an employee with the Bureau of Prisons in special investigative services, interviewed Merchant after he was placed in segregation. Thomas testified that he advised Merchant of his *Miranda* rights, *id.* at 46, after which Merchant told him that: the cocaine was for a drug debt, *id.* at 49; Dossett had no knowledge of the contents of the package, *id.;* and, he had "considered killing another inmate behind this." *Id.* at 50. Thomas also stated that Merchant did not mention any threats made to him regarding the seized cocaine and that Merchant was cooperative and "didn't indicate any fear for his safety at all. He was very calm, very relaxed." *Id.* at 68.

Following Thomas' testimony, the government called Dossett who had been listed as a witness for several months. At that time, Merchant informed the court that he could not handle cross-examination of Dossett because he was in love with her. *Id.* at 73–74. Merchant then asked the court to allow the Federal Public Defender to undertake his defense. Following an extended discussion, *id.* at 73–85, during which the Federal Public Defender related that she was not prepared to try the matter, that she would need a continuance to prepare herself and to talk to the witnesses, and that she and the court both had "scheduling problems next week," *id.* at 84, the court denied Merchant's request and ruled that Merchant must continue representing himself.

Thereafter, Dossett testified that she was Merchant's girlfriend, that she had received the drugs in the mail, *id.* at 89, and that Merchant told her what to wear and how to place the drugs in her jacket when bringing the drugs into the prison. *Id.* at 90–91. Merchant cross-examined Dossett in detail. Dossett related that she brought the drugs to the prison at Merchant's request just as she had done on one prior occasion. *Id.* at 105.

After the government rested, Merchant presented his defense through the testimony of five inmates, Jesse Hopson, Anthony Hall, Darrel Smith, Agustin Gonzales–Barrajas, Johnny Bristow, and Earl Anderson, a Bureau of Prisons caseworker assigned to Leavenworth. Merchant defended asserting that he was pressured to bring the drugs into the penitentiary.

Hopson testified that Merchant indicated that he was being pressured to bring drugs into the penitentiary and that he had observed Merchant in a heated discussion with another inmate shortly before the incident in question. (R., Vol. 3, at 147–52). Hall testified that he signed a form relieving the Department of Justice of any responsibility for his safety within the general population of the prison after prison officials received a letter indicating that he was dealing in drugs and that he would be killed. *Id.* at 162. Hall also testified that he was unaware of "any pressure to cause the situation that is presently before the court." *Id.* at 167.

Smith testified that: Merchant had told him that he was being pressured to bring drugs into the penitentiary, *id.* at 180–81; Merchant had asked him for a knife but he did not have one, *id.;* and other inmates were looking for Merchant the day before the incident in question at a time when Merchant was hiding in Smith's cell. *Id.* at 185–86. Gonzales–Barrajas testified that: he knew there was a problem between Merchant and the Latin population at the penitentiary, *id.* at 210; the Latin population referred to Merchant as the black man who was a big liar, but he did not have any knowledge of Merchant lying, *id.* at 210–11; and Merchant kept very much to himself. *Id.* at 212.

Bristow testified that: Merchant was "more or less pressured into the incident with the drugs," and he was "pressured real highly," *id.* at 215; Merchant told him that he did not want to do drugs but he knew he had to because his life was on the line, *id.* at 218; and if Merchant had gone to the authorities he "probably wouldn't [have] live[d] too much longer." *Id.*

Anderson testified, *inter alia*, that: an inmate who asked for protective custody would not be left in the general population (R., Vol. 4, at 294); he knew Merchant fairly well and spoke with him a number of times, *id.* at 302; Merchant never mentioned that he was being pressured to bring drugs into the prison, although Merchant would have had the opportunity to tell him about such a problem, *id.;* Merchant had an extensive disciplinary history, including assault with a sharpened instrument, assault of a staff member, threatening another with bodily harm, and fighting with another person, *id.* at 303–05; Merchant had a history of drug abuse, *id.* at 305; and "it's sort of an inmate's decision as to whether or not he wants to lock down for his own safety." *Id.*

Merchant testified on his own behalf that: he was forced to bring drugs into the penitentiary, *id.* at 361–64; he had hoped that he would be caught and taken to special housing, *id.* at 365–66; and he could not go to the authorities with the names of the inmates pressuring him because the authorities would go to the inmates so named, after which he could not be protected from either those inmates or the inmates who depended on them. *Id.* at 370–77.

After the parties rested, the court denied Merchant's request for a defense instruction based on coercion or duress. The court instructed the jury that inasmuch as the evidence had failed to establish that there was "no reasonable opportunity to escape the pressure without committing the crime," *id.* at 410, "the evidence of pressure in this case does not provide a legal excuse for the crimes charged." *Id.* Following his conviction but prior to sentencing, the court thanked Merchant for his deportment and demeanor and for handling himself as a gentleman. (R., Vol. 5, at 437).

During sentencing, the court, after finding that there was not "anything in this case that would call for a downward departure," (R., Vol. 6, at p. 33), refused Merchant's request to depart downward pursuant to § 5K2.12 of the Sentencing Guidelines. Thereafter, the court sentenced Merchant to thirty-six months imprisonment, to run consecutively to the sentence he was then serving.

On appeal, Merchant contends that the district court erred in (1) requiring that he represent himself at trial, (2) refusing to instruct on the defense of coercion or duress, and (3) refusing to grant a downward departure based on coercion and duress.

## I.

■ Merchant contends that the court erred in requiring him to continue to represent himself at trial.

Merchant acknowledges that the Federal Public Defender was appointed to represent him following his indictment and thereafter continued to represent him on an uninterrupted basis until he moved to represent himself. Nevertheless, Merchant argues that the court erred in denying his motion to withdraw as counsel. Merchant contends that he was not attempting to manipulate the court by proceeding *pro se*, and he had felt competent to represent himself at the time he made the request to proceed *pro se*. However, he argues that the court violated his Sixth Amendment right to counsel by not

reappointing the Federal Public Defender to represent him when he no longer felt competent to represent himself. Merchant further argues that a review of the record discloses that competent trial counsel could have made better use of the witnesses to develop the elements of his coercion and duress defense.

The government responds that the district court did not err in requiring Merchant to continue representing himself. The government argues that Merchant made a valid waiver of his right to counsel after the court painstakingly informed Merchant of the hazards of the trial and the charges and penalties he was facing. The government argues that the court's decision was in accord with *United States v. Solina*, 733 F.2d 1208, 1211–12 (7th Cir.), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 519, 83 L.Ed.2d 408 (1984), in which the court held:

> A criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause.

The government argues that inasmuch as Merchant unequivocally asserted his right to represent himself and decided it was time for a change only after the government had completed nearly two-thirds of its case, the court properly found that it was necessary for Merchant to proceed on his own behalf. We agree.

■■■■ A defendant has a constitutional right to waive his right to counsel and to represent himself at criminal trial. *Faretta v. California*, 422 U.S. 806, 834–35, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562 (1975); *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). To be valid, however, the waiver of this fundamental constitutional guarantee must be voluntary, knowing, and intelligent. *United States v. Allen*, 895 F.2d 1577, 1578 (10th Cir.1990). Ideally, as here, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and the risks of proceeding *pro se*. *Willie*, 941 F.2d at 1388 (citing *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541).

Here, the district court advised Merchant in exhaustive detail about the pitfalls of proceeding *pro se*, and Merchant does not contend that his waiver of his Sixth Amendment right to counsel was in any way defective. Instead, he argues that the court erred in refusing his request to withdraw as counsel and to substitute the Federal Public Defender as counsel for the remainder of the trial.

■■■■ Once a defendant exercises his constitutional right to defend himself and proceed *pro se*, he does not have the absolute right to thereafter withdraw his request for self representation and receive substitute counsel. *See, e.g., Willie*, 941 F.2d at 1391 ("Since he has waived his right to counsel, he cannot now assert that the trial court erred in not replacing the attorney whose assistance he has waived."). We review a district court's refusal to substitute counsel for an abuse of discretion. *United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir.1992).

■■■■ In reviewing requests for the substitution of counsel, courts consider, *inter alia*, the degree to which a defendant has shown good cause and the timeliness of the request. *Id.* "It is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings have begun." *United States v. Tolliver*, 937 F.2d 1183, 1187 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 329, 116 L.Ed.2d 269 (1991) (citing *Horton v. Dugger*, 895 F.2d 714, 717 (11th Cir.1990)).

Applying these standards to our case, we hold that the district court did not abuse its discretion in denying Merchant's request to withdraw as counsel and to substitute the Federal Public Defender for the remainder of the trial. A review of the trial transcript establishes that Merchant did a satisfactory job in proceeding *pro se*. Moreover, Merchant's request was clearly untimely, made well after meaningful trial proceedings had

begun and after the government had completed nearly two-thirds of its case.

## II.

■ Merchant contends that the district court erred in refusing to instruct the jury on the defense of coercion or duress. In *United States v. Scott*, 901 F.2d 871, 873 (10th Cir. 1990), we set forth the requirements of a coercion or duress defense:

> A coercion or duress defense requires the establishment of three elements: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm.

The district court applied *Scott* in finding that Merchant had failed to establish the third element of this defense:

> Three, an essential element to the establishment of the duress defense is proof of no reasonable opportunity to escape the threatened harm. The evidence indicates that the defendant could have gone to the guards at the time of the visit or before to ask for protective custody. Although the defendant has rendered opinion—rendered an opinion that this was not a reasonable opportunity to escape the harm, the Court believes the evidence does not approach the level necessary for giving the coercion instruction.

(R., Vol. 4, at 393–94).

Merchant argues that he clearly met his burden of establishing all three elements of the defense:

> ... he felt going to the authorities would not provide any opportunity for escape because his past experiences were that the authorities would immediately question those named. In this case, Harold Guy was the individual threatening him, and while perhaps he could be protected from Harold Guy, he could not be protected from everyone in the institution responsible to Harold Guy. Even testimony from Bureau of Prisons investigator Bill Thomas was that Harold Guy controlled many individuals and that they could not provide

protection to Appellant from individuals that they did not know the identity of. (Brief of Appellant at 15).

The government responds that the district court did not err in refusing to instruct on coercion or duress since the evidence established that Merchant had ample opportunity to escape the harm with which he was allegedly threatened. This evidence, according to the government, included: Merchant had the opportunity, which he did not utilize, to approach one of the guards and ask for protective custody at the time the cocaine was brought into the prison; Merchant did not ask for protective custody after he was caught possessing the cocaine; Thomas, a Bureau of Prisons employee who interviewed Merchant after he was placed in segregation, testified that Merchant made no mention of being coerced, but instead Merchant threatened to kill the individual for whom he was allegedly introducing the drugs; Merchant did not indicate any fear for his safety; Dossett had delivered cocaine to Merchant on at least one prior occasion; and Anderson, a Bureau of Prisons caseworker called by Merchant, testified that Merchant had ample opportunity to tell him or another staff member if he was experiencing trouble at the prison.

The government contends that this evidence, when considered in its entirety, establishes more of a complicity on Merchant's part than coercion. Thus, the government argues, the court did not err in refusing to instruct on coercion or duress.

■ "Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990) (quoting *United States v. Pack*, 773 F.2d 261, 267 (10th Cir.1985)). Moreover, a defendant is not entitled to an instruction which lacks a "reasonable legal and factual basis." *Bryant*, 892 F.2d at 1468.

We hold that the court did not err in refusing to instruct on coercion or duress.

Merchant was aware that he could obtain protective custody. He testified that he hoped he would be "caught" and placed in special housing. (R., Vol. 4 at 365–66). After being placed in segregation, Merchant did not indicate any fear for his safety, but rather threatened to kill the inmate "behind this." Merchant's own witness, Anderson, testified that Merchant never mentioned that he was being pressured to bring drugs into the prison and that Merchant had the opportunity to tell him about such a problem. The government presented evidence that Merchant had the opportunity to speak to prison guards and request protective custody when the cocaine was delivered into the prison.

### III.

■ Merchant contends that the court erred in refusing to grant a downward departure based on coercion or duress. Merchant argues that the court should have departed downward under policy statement U.S.S.G. § 5K2.12, p.s., which provides in part that "the court may decrease the sentence below the applicable guideline range" if "the defendant committed the offense because of *serious coercion, blackmail* or *duress*" but "under circumstances not amounting to a complete defense." (Emphasis supplied).

Merchant does not claim that the district court erred as a matter of law or that it misinterpreted the Sentencing Guidelines. Accordingly, we are without jurisdiction to consider the district court's discretionary refusal to depart downward. *United States v. Roberts,* 980 F.2d 645, 648 (10th Cir.1992) (it is well established in this circuit that discretionary refusals not to depart downward are not appealable when the sentence is within the guideline range); *United States v. McHenry,* 968 F.2d 1047, 1048 (10th Cir. 1992) (it is well established in every circuit which has considered the jurisdictional issue, that an appellate court does not have jurisdiction to review a district court's refusal to depart downward).

**AFFIRMED.**

EBEL, Circuit Judge, dissenting:

I respectfully dissent.

In my opinion, there is adequate evidence in the record to have justified submitting the defense of coercion and duress to the jury. The defendant testified that he was threatened by Mr. Harold Guy and others if he didn't smuggle cocaine into the prison for them. He produced several independent witnesses to corroborate those threats and his fears.

Although the district court concluded that the defendant had a reasonable opportunity to escape the threatened harm by telling a guard about the threat and seeking protective custody, the defendant testified that this was not a reasonable alternative for the following reasons: (1) he knew that if he reported a threat to his safety, it would be investigated and those who had threatened him would inevitably learn that he was a snitch; (2) Harold Guy controlled other inmates in prison, and although the prison guards might be able to protect him from Harold Guy directly, they could never protect him from all of the unknown inmates who were controlled by Harold Guy; (3) he was concerned about the safety of his girlfriend, Ms. Dossett. Because she lived on the outside, the prison authorities could not protect her; and (4) he was serving a very long sentence, and it was not practical or realistic to stay in protective custody (which means substantial restrictions on freedom) for the entire term.

Admittedly, there were inconsistencies in the defendant's story, and the jury may or may not have believed him. But, in our system of justice, the jury, and not the judge, is the ultimate arbiter of guilt or innocence. A defendant is entitled to jury instructions on any theory of defense finding support in the evidence and the law, and the failure to so instruct is reversible error. *United States v. Scafe,* 822 F.2d 928, 932 (10th Cir.1987) (citing *United States v. Lofton,* 776 F.2d 918, 920 (10th Cir.1985)).

Here, in my opinion, there was a sufficient factual and legal basis in the record to have entitled the defendant to the requested jury instruction presenting the defense of coercion and duress. Accordingly, I would reverse

the conviction on that ground and remand for a new trial.