**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Patrick H. McGUIRE, Defendant–Appellant.**

No. 93–3290.

United States Court of Appeals, Tenth Circuit.

June 3, 1994.

Paul S. Becker, Sp. Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with him on the brief), District of Kansas, Kansas City, MO, for plaintiff-appellee.

Steven K. Gradert, Asst. Federal Public Defender, District of Kansas, Wichita, KS, for defendant-appellant.

Before BALDOCK, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and SHADUR, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

A jury sitting in the United States District Court for the District of Kansas convicted Patrick H. McGuire of aiding and abetting Thomas J. Earlywine and Terrence Dodds who took by force and intimidation $68,256 from the person and presence of employees of the Capitol Federal Savings and Loan Association ("Capitol Federal"), a federally insured institution located in Wichita, Kansas, in violation of 18 U.S.C. §§ 2113(a) and (d) and 2. McGuire was sentenced to imprisonment for 25 years, said sentence to run concurrently with a previous 25–year sentence imposed on him for armed bank robbery in the United States District Court for the Eastern District of Wisconsin.

On appeal, counsel raises three grounds for reversal: (1) the district court erred in allowing the government to introduce evidence of "other offenses," namely bank rob-

---

* Honorable Milton I. Shadur, Senior District Judge, Northern District of Illinois, sitting by designation.

beries other than the one with which McGuire was charged; (2) the district court erred in refusing to give McGuire's tendered instruction regarding how the jury should weigh the testimony of an accomplice and in giving an instruction on accomplices which was unclear; and (3) the evidence adduced at trial is legally insufficient to support the verdict. Finding no reversible error, we affirm.

The government's theory of the case was that McGuire, Earlywine and Dodds, all residents of Rockford, Illinois, drove from Rockford to Wichita, Kansas, and on November 8, 1989, took by force and violence approximately $68,256 from two tellers employed at Capitol Federal. Specifically, it was the government's theory that McGuire planned the robbery, and pursuant thereto rented a van in Rockford and then drove the three to Wichita, where they spent several days "casing" possible victim banks.

As for the robbery itself, it was the government's theory that Dodds, armed with a handgun, and Earlywine, unarmed, entered the offices of Capitol Federal around the noon hour on November 8, 1989, and took approximately $68,256 from two employees of Capitol Federal by force and violence. Furthermore, the government asserted that although McGuire did not himself enter the offices of Capitol Federal, he was driving around the vicinity in the rented van during the robbery acting as a look-out and then rendezvoused with Dodds and Earlywine in a nearby shopping mall parking lot and thereafter drove the van Northward to Salina, Kansas, and then to Kansas City, Missouri, and finally back home to Rockford.

It was McGuire's theory of the case that the government's case rested entirely on the testimony of Dodds and Earlywine, both accomplices, and that neither should be believed since each had entered into an agreement with the government to testify against McGuire concerning the Wichita robbery in exchange for which each had been promised immunity from further prosecution for the various robberies, and each also expected some form of "leniency" in connection with the sentence each was then serving. As will be discussed later, it was McGuire's position

that although he was involved with Dodds in a bank robbery in Milwaukee, Wisconsin, in December 1990, wherein he and Dodds were apprehended, he did not participate in any other bank robbery with either Dodds or Earlywine.

McGuire did not testify, though counsel did call as witnesses three persons who resided in Rockford, Illinois, two of whom were acquainted with Earlywine, with one being acquainted with both Earlywine and Dodds. The gist of their testimony was that Earlywine and Dodds had a reputation in and around Rockford as being dishonest and not credible persons.

## Other Crimes

Prior to trial, McGuire filed a motion *in limine* requesting, in effect, an order precluding the government from introducing at trial any evidence of crimes committed by McGuire other than the Wichita robbery, which was the charge then pending against him. Specifically, counsel requested that the government be precluded from introducing evidence of other bank robberies allegedly committed by McGuire, robberies of "supermarkets, groceries, and various other types of stores" committed by McGuire, and any testimony or reference to Organized Crime or the Mafia.

In a pretrial hearing, the district court denied the motion in part, and granted it in part. Apparently no testimony was taken at the hearing, though there was colloquy between court and counsel. In any event, the district court held that evidence of other bank robberies was admissible under Fed. R.Evid. 404(b), and though it might be prejudicial, its probative value outweighed its prejudicial effect and therefore should not be excluded under Fed.R.Evid. 403. At the same time, the district court held that the government would not be permitted to introduce evidence of supermarket robberies and the like, nor could it introduce evidence of a mob connection.

As indicated, at trial Dodds and Earlywine testified for the government, and each indicated that he was testifying pursuant to an agreement with the government whereby in

exchange for his testimony concerning McGuire's participation in the Wichita robbery, he expected some favorable consideration in connection with the sentence each was then serving, and also that he would not be prosecuted for any other offense. Both Dodds and Earlywine testified that McGuire planned the Wichita robbery, and that McGuire was driving around as a look-out when the two of them entered the offices of Capitol Federal and took at gunpoint money belonging to Capitol Federal. The two testified that they met McGuire very shortly after the robbery in a nearby parking lot, and that with them lying on the floor of the van, McGuire got on the interstate freeway and effected their escape by driving northward from Wichita to Salina.

As concerns evidence of other bank robberies, the testimony of Dodds and Earlywine established the following: (1) in May, 1989, Earlywine and McGuire committed an armed robbery of a small bank in Decatur, Illinois; (2) in July, 1989, Earlywine and McGuire robbed a bank in Urbana, Illinois; (3) in August, 1989, Earlywine and McGuire robbed a bank in Milwaukee, Wisconsin, in the course of which they abandoned their get-away vehicle and Dodds, responding to their telephone call, drove from Rockford, Illinois, to Milwaukee, and then drove them back to Rockford; (4) on November 8, 1989, all three participated in the robbery of Capitol Federal in Wichita; (5) in January, 1990, all three participated in a bank robbery in Omaha, Nebraska; (6) in April, 1990, Earlywine and McGuire committed a bank robbery in Columbus, Ohio; (7) in September, 1990, Earlywine and McGuire committed a bank robbery in Oklahoma City, Oklahoma; and (8) on December 13, 1990, Dodds and McGuire robbed a bank in Milwaukee, Wisconsin.

In the bank robbery in Milwaukee, Wisconsin, on December 13, 1990, Dodds and McGuire were apprehended immediately after they had robbed the bank. Each was charged with that bank robbery and on pleas of guilty, McGuire was sentenced to imprisonment for twenty-five years and Dodds was sentenced to imprisonment for seven years and nine months.

In February, 1992, Dodds, with the advice and assistance of his lawyer, began talking to the FBI about robberies other than the one for which he was convicted in which the three, in one way or another, had been involved. Such included the Wichita robbery. Dodds at the time was serving his sentence in a federal institution in Oxford, Wisconsin.

Based upon information thus furnished the FBI by Dodds, Earlywine was arrested in Rockford, Illinois on March 16, 1992, and was subsequently charged with the bank robbery occurring in August, 1989, in Milwaukee, Wisconsin. He pled guilty to that charge, as well as to other bank robbery charges, and was sentenced to 32 years imprisonment. Shortly thereafter, Earlywine also began "cooperating" with the FBI, and ultimately, as indicated, both Earlywine and Dodds testified as government witnesses at McGuire's trial in Wichita.

Fed.R.Evid. 404(b) provides that evidence of other crimes is not admissible to prove the character of a defendant in order to show action in conformity therewith. That same rule goes on to state, however, that evidence of other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed.R.Evid. 404(b).

As above indicated, the government introduced evidence of seven bank robberies other than the bank robbery in Wichita for which McGuire was then on trial. Of the eight robberies, McGuire was, according to Earlywine and Dodds, involved in all eight. All three were involved in two robberies, i.e., the ones in Wichita and Omaha. Earlywine and McGuire, but not Dodds, were involved in five robberies, i.e., the ones occurring in Decatur, Illinois; Urbana, Illinois; Milwaukee, Wisconsin; Columbus, Ohio; and Oklahoma City, Oklahoma, although, as indicated, Dodds did drive from Rockford, Illinois, to Milwaukee, Wisconsin, and brought Earlywine and McGuire back to Rockford. Dodds and McGuire, but not Earlywine, were involved in one robbery, i.e., the last one in Milwaukee when they were caught.

The government sought to introduce evidence of the seven other bank robberies to

establish McGuire's "identity" as one involved in the Wichita robbery, and also to show the existence of a common scheme or plan in all eight of the bank robberies. It was the government's position that all eight had a similar, if not completely identical, *modus operandi.* In each, McGuire did the advance planning. The common scheme or plan was that in every instance McGuire looked to medium-sized Midwestern cities in order to find a small branch bank with few employees. Also, McGuire was looking for a bank that had easy access to an interstate in order to facilitate a get-away. McGuire further desired that the small bank with easy access to an interstate be located near the parking area of a shopping center in order to carry out the "vehicle switching" once the robbery was over. It is the government's position that all of the robberies displayed, in varying degrees, so-called "signature qualities."

■ The district court denied McGuire's request to limit the government to evidence of the Wichita robbery and allowed the government to introduce evidence of the seven other bank robberies. In denying a post-trial motion for acquittal made by McGuire, the district judge explained his reason for admitting evidence of other bank robberies as follows:

> The evidence at issue in this case is testimony that the defendant was involved in several other bank robberies, including a robbery in Milwaukee, Wisconsin for which defendant was convicted. The court admitted the evidence on the ground that it showed a pattern and common plan. The accomplice-witnesses, Terrence Dodds and Thomas Earlywine, testified that the robberies, like the Wichita robbery, were executed according to a specific plan developed by the defendant. The three men would travel in a van from Rockford, Illinois, to a medium-sized Midwest city. They would stay a day or two in the town, using the time to scout locations for the robbery and purchase an inexpensive used car. The banks chosen always had similar characteristics: they were small, with few employees and little customer traffic, close to a shopping area, and with easy access to

an interstate highway. The men would wait until there were no customers in the bank, and then Dodds and Earlywine would drive the used car to the bank and rob it while defendant waited nearby in the van. When the robbery was completed, the three men would meet at a pre-determined department store parking lot, where Dodds and Earlywine would get into the van and leave the used car. Defendant would drive out of town, and the other two would lie down between the seats so they would not be seen by any state trooper they happened to pass.

We agree with the district court's analysis of the matter. Certainly all eight robberies had many common characteristics which would tend to show that the defendant was involved in the Wichita robbery and that the latter robbery was but a part of a larger common scheme or plan. The "other crime" must be similar to the crime charged, but it need not be "identical." *United States v. Gutierrez,* 696 F.2d 753, 755 (10th Cir.1982), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). We are not inclined to disturb the district court's ruling that such evidence is admissible under Rule 404(b). In this regard, the jury was instructed that evidence of other robberies was permitted for the limited purpose of proving common plan or scheme. *See United States v. Porter,* 881 F.2d 878 (10th Cir.), *cert. denied,* 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Record,* 873 F.2d 1363 (10th Cir.1989).

■ In this Court, McGuire argues, as he apparently did in the district court, that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice under Fed. R.Evid. 403. A decision by a district court whether to exclude evidence as unfairly prejudicial under Rule 403 is "one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited." *United States v. Keys,* 899 F.2d 983, 987 (10th Cir.) (quoting *Rigby v. Beech Aircraft Co.,* 548 F.2d 288, 293 (10th Cir.1977)), *cert. denied,* 498 U.S. 858, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990) (citations omitted). McGuire suggests that evidence of

the seven other robberies was highly prejudicial and of little probative value. It may well have been quite prejudicial, but, in our view, it also possessed great probative value. We believe that the evidence of other bank robberies committed by McGuire meets the four-part test enunciated in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

### Instruction re Accomplice

■ The district court instructed the jury that an agreement between an accomplice and the government whereby the former testifies against another in a criminal trial with the promise that in return he would receive some form of "favorable treatment" is not unlawful. In the same instruction, the district court went on to state as follows:

Nevertheless, while such agreements are approved and sanctioned by courts and society, a jury listening to testimony of a co-defendant or a claimed accomplice in a crime, is entitled to consider and should carefully weigh such testimony to determine its believability or credibility in the light of whether any of the special benefits given to a cooperating witness may have induced such witness to testify falsely.

■ McGuire asserts that the instruction given did not "go far enough." We disagree. If it went much further it would instruct the jury to disregard completely the testimony of an accomplice such as Dodds or Earlywine. Such would of course invade the province of the jury of assessing the credibility of all witnesses, including accomplices. The instructions tendered by counsel on this matter were rather argumentative and were not really instructions on the law of the case. A defendant is not entitled to "any specific wording of instructions." *United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990). The instruction given was, in our view, adequate.

### Sufficiency of the Evidence

■ McGuire argues that the evidence is insufficient to support the jury's verdict. This contention is apparently premised on the assumption that the testimony of an accomplice should seldom, if ever, be believed. Such is not the law. A jury may convict a defendant in a criminal case on the uncorroborated testimony of an accomplice, although in such circumstance the jury should be instructed as to the manner in which such testimony should be considered. *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir.), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982); *United States v. Hill*, 627 F.2d 1052 (10th Cir.1980).

■ In the instant case, there was testimony from two accomplices. As indicated, Dodds, while incarcerated, implicated McGuire and Earlywine in various robberies before Earlywine was ever arrested. Earlywine testified that he had not spoken to Dodds since mid–1990, so there was apparently no opportunity for collusion between Dodds and Earlywine. Yet their testimony at trial was strikingly similar, each thereby tending, in a sense, to corroborate the other. In any event, by its verdict, the jury was convinced that McGuire did participate in the Wichita robbery, and the record supports such determination.

Judgment affirmed.

SHADUR, Senior District Judge, dissenting.

Although (or perhaps because) I differ with one aspect of the panel's opinion, I should stress at the outset my concurrence in its other two facets—the upholding of the trial court's Fed.R.Evid. ("Rule") 404(b) ruling and the determination that the evidence at trial was amply sufficient to support the jury verdict. In a sense it is those very factors—as totally dependent as they and McGuire's conviction are on the testimony of accomplices Dodds and Earlywine—that make the troublesome nature of the jury instruction about those witnesses so critical.

Rule 404(b) deals with one of the most sensitive areas of the law of evidence, most particularly in criminal cases. All of us in the criminal justice system (judges and lawyers alike) recognize the need to minimize the possibility that jurors might convict a defendant because of what he or she has done in the past, rather than on what he or

she is charged with now. That same need to avoid convictions simply because defendant is a bad man or a bad woman, rather than by proving defendant's commission of the charged offense, is what drives Rule 404(b)'s prohibition against the admissibility of proof as to prior acts or crimes merely as evidence of defendant's propensity to commit the current crime.

In this instance the trial judge properly analyzed the proffered evidence from McGuire's two accomplices in terms of the non-propensity purposes that are permitted by Rule 404(b), as well as the judge's having engaged in the appropriate balancing called for by Rule 403. With that evidence before the jurors, it follows as a matter of course that they could rationally have found McGuire guilty beyond a reasonable doubt of having committed the current bank robbery—the standard dictated by the seminal decision in *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979) and its numerous progeny in this Circuit and elsewhere.

But the fact that such Rule 404(b) evidence—indeed all of the evidence leading to McGuire's conviction—emanated from the uncorroborated testimony of those two accomplices makes it all the more important that the jury have been properly cautioned about the need to view such testimony through a special lens. Here is the full instruction that the trial judge gave in that respect:

> Oftentimes, in cases where more than one person is claimed to have participated with accomplices in criminal activity, for which criminal charges have been or may be brought, such claimed accomplices, for the purpose of avoiding or lessening potential charges, may admit their participation and guilt in criminal offenses, and negotiate with the government about giving testimony concerning the participation of others in such offenses or other criminal activity, in exchange for some type of favorable treatment for himself by the government prosecuting officials. Such favorable treatment may take many forms, such as dismissal of all prosecution, substituting a lesser charge, and/or recommendation to a court

for a lighter sentence or probation from sentence.

> Such plea negotiation or bargaining is an approved and legitimate practice in law enforcement and judicial proceedings for the dual purposes of detecting or proving participation of others in a crime than the testifying person, and enhancing the operation of the law enforcement and judicial processes.

> Nevertheless, while such agreements are approved and sanctioned by courts and society, a jury listening to testimony of a co-defendant or a claimed accomplice in a crime, is entitled to consider and should carefully weigh such testimony to determine its believability or credibility in the light of whether any of the special benefits given to a cooperating witness may have induced such witness to testify falsely.

Because that instruction departs so materially—and, I submit, does so to McGuire's serious detriment—from the clearly-established law of this Circuit (and, it is worth noting, from the law of other Circuits as well), I am constrained to dissent.

For some four decades this Court has plainly demanded that juries must be warned unequivocally about the skepticism with which uncorroborated accomplice testimony must be viewed. Thus nearly a quarter century ago *United States v. Birmingham*, 447 F.2d 1313, 1317 (10th Cir.1971) put the matter succinctly, citing to decisions of this Court from 1955 and 1969:

> The rule is established in this Circuit, however, that the court must instruct the jury that testimony of accomplices must be carefully scrutinized, weighed with great care, and received with caution.

My research has disclosed no departure from that principle, which has been confirmed and reconfirmed on a number of occasions. This Court spoke to the issue at somewhat greater length in *United States v. Shepherd*, 739 F.2d 510, 512–13 (10th Cir.1984):

> This Court has affirmed convictions based upon uncorroborated accomplice testimony. *E.g., United States v. Webb*, 466 F.2d 190 (10th Cir.1972), *cert. denied*, 414 U.S. 1012, 94 S.Ct. 378, 38 L.Ed.2d 250 (1973); *United States v. Birmingham*, 447 F.2d

1313 (10th Cir.1971). However, we have been sufficiently concerned in such cases that we have found plain error requiring reversal if the trial court failed to give a jury instruction that the testimony of accomplices must be carefully scrutinized, weighed with great care and received with caution. *United States v. Hill*, 627 F.2d 1052 (10th Cir.1980); *United States v. Owens*, 460 F.2d 268 (10th Cir.1972).

And both *Birmingham* and *Shepherd* have consistently been confirmed to be alive and well and living in this Circuit as recently as last year (*United States v. Brown*, 995 F.2d 1493, 1503 n. 3 (10th Cir.1993); *United States v. Chatman*, 994 F.2d 1510, 1515 (10th Cir.1993); *United States v. Miller*, 987 F.2d 1462, 1465 (10th Cir.1993)).

Nor is the Tenth Circuit alone in this respect. For example, in the Seventh Circuit (where I preside over criminal trials) the instruction prepared by the Committee on Federal Criminal Jury Instructions and consistently delivered to juries delivers the identical message (Instruction 3.22):

> You have heard testimony from _____ who stated that he was involved in the commission of the alleged crime charged against the defendant. You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

In the Fifth Circuit the caveat to the jury prescribed by the District Judges Association is put even more strongly (Instruction 1.15):

> The testimony of an alleged accomplice, and the testimony of one who provides evidence against a defendant as an informer for pay or for immunity from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received either financially or as a result of being immunized from prosecution.

> You should keep in mind that such testimony is always to be received with caution and weighed with great care.

> You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

What all of these instructions have in common is an emphasis on the special burden that such uncorroborated accomplice evidence bears, undiluted by any emphasis about the benefits that the criminal justice system may derive from plea bargains. By contrast, the jury in this case was first instructed about the value and legitimacy of accomplice testimony in assisting law enforcement officials (something that really says nothing about the credibility of the accomplice witnesses, which is and should be the jury's sole concern) before it was given a substantially watered-down version of the strongly cautionary instruction that this Court has properly insisted upon again and again. In this case I believe that the dilution presented by the trial court's instruction would fail any fair Rule 403–like balancing test, for the message that was given to the jury by the most credible source—the judge—is one in which the potential prejudice to the defendant substantially outweighed the proper cautionary message.

Now I recognize of course that McGuire may well be guilty of the crime with which he was charged, and he may well deserve an extended prison sentence if properly convicted of that crime. But the strength of our system lies in assuring its protections to those who may be the least deserving among us, not just to those who are most worthy and therefore least need those protections. It must be remembered that as deep-dyed a villain as McGuire is portrayed to be, those testifying against him are admittedly equally deep-dyed—and they had a direct interest in receiving benefits for their having testified against McGuire. Surely the jury that hears their testimony ought to be given a clear and accurate understanding of the standard that applies to such evidence (and without that understanding being tainted by the jury first being told about a basic irrelevancy: the usefulness of such testimony to prosecutors).

It is of course true that trial judges are given plenty of room for the exercise of their sound discretion. But I suggest that it represents an abuse of that discretion for any trial judge to depart so dramatically from the roadmap that has been clearly marked out by the uniform decisions in this Circuit—and to do so in an area where that error cannot be characterized as harmless. Accordingly I must respectfully dissent.