**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MAKONNEN MILES,

    Defendant-Appellant.

No. 98-3202
(D.C. No. 97-CR-10068-3)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit Judge, **KELLY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

In a superceding indictment filed on December 17, 1997, in the United States District Court for the District of Kansas, Makonnen Miles ("Miles") and his brother, Pedro McPhearson ("McPhearson"), were charged in a four-count indictment as follows: (1) both were charged with conspiracy from April 30, 1997 to May 2, 1997, with each other and with Joyce Lewis ("Ms. Lewis") and Michael Smiley ("Smiley") to possess

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

with an intent to distribute cocaine base in violation of 21 U.S.C. § 846; (2) both were charged with conspiring from April 30, 1997 to May 2, 1997, with each other and with Ms. Lewis and Smiley to possess with an intent to distribute cocaine (powder) in violation of 21 U.S.C. § 846; (3) both were charged with possessing from May 1, 1997 through May 2, 1997, with an intent to distribute 14 ounces of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (4) both were charged with possession from May 1, 1997 through May 2, 1997, with an intent to distribute 2 ounces of cocaine (powder) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[1]

A jury convicted Miles on all four counts of the superseding indictment and he was sentenced to imprisonment for 240 months on each of the four counts, the sentences to be served concurrently. (McPhearson, Miles' brother, was not tried with Miles, apparently McPhearson at the time of trial had not been apprehended.) Miles appeals his several convictions and sentences. We affirm.

On appeal, Miles' principal argument is that the government failed to show that he knowingly participated in any of the crimes charged. Although Miles did not himself testify at trial, his counsel argued, in effect, that Miles was simply in the wrong place at the wrong time. A brief recital of the facts is in order.

---

[1]The charges were the same in the original indictment as in the superseding indictment. However, the defendants in the original indictment were Makonnen Miles, Joyce Lewis and Michael Smiley.

On April 29, 1997, agents of the Drug Enforcement Administration Task Force ("DEA") received information that a woman using the name of Sheila Lucky would be flying to Los Angeles, California from Wichita, Kansas to purchase crack cocaine. The DEA later learned that Ms. Lucky had in fact left for Los Angeles on April 30, 1997, and would be returning to Wichita on May 2, 1997. The DEA established surveillance at several points around the Wichita airport. The agents had a general description of Ms. Lucky and on May 2, 1997 at about 7:30 a.m. they observed a woman fitting that description arrive on a flight from Los Angeles. That woman, who was Ms. Lewis, got off the plane with two men later identified as Miles and Smiley. The three were intercepted by the DEA agents after they had retrieved their luggage. The agents asked Ms. Lewis, if they could search her luggage. She consented, and later agreed to a strip search. As the latter was about to commence, she reached into her girdle and handed over to a female DEA agent a large package containing what was later identified as crack cocaine, and a smaller package containing what was later identified as powder cocaine.[2] A search of Miles disclosed $387.81 in cash, but no drugs. Those are the skeleton facts. Other facts will be developed in connection with Miles' argument as to why his convictions should all be reversed.

---

[2]At trial, a chemist testified that the larger package contained 391.1 grams of crack cocaine and that the smaller package contained 46.3 grams of powder cocaine.

As indicated, Miles' principal argument is that the government failed to prove that he had guilty knowledge or intent, particularly as such relates to Counts 1 and 3 which involved crack cocaine or cocaine base, as opposed to Counts 2 and 4 which involved powder cocaine.

A key government witness at Miles' trial was Ms. Lewis, who had entered into a plea agreement with the government and agreed, *inter alia,* to testify truthfully at Miles' trial. Ms. Lewis testified that she first met McPhearson, who resided in Los Angeles, California, in 1995, in connection with the "alteration" of cellular phones so that long distance calls could be made and charged to someone else's number. Ms. Lewis went on to testify that she later learned McPhearson was a source for crack cocaine and she thereafter purchased crack cocaine from him in 1996 and 1997.

In April 1997, Ms. Lewis was residing in Wichita, Kansas, having moved there from Oklahoma. Ms. Lewis testified that on April 30, 1997, she, and her 20-year old nephew, Smiley, flew to Los Angeles to obtain crack cocaine from McPhearson. On May 1, 1997, she obtained crack cocaine from McPhearson and placed it in her girdle. She testified that it was originally planned that McPhearson would return to Wichita with her in order that he could obtain his share of the proceeds from the sale of the cocaine since she had no money to make the purchase. However, Ms. Lewis stated that on the previous day, April 30, 1997, she learned that McPhearson would not be accompanying her back to Wichita and that his brother, Miles, would "take his place." Specifically, on April 30,

1997, according to Ms. Lewis, she was a party to a three-party telephone call involving herself, McPhearson and Miles, in which it was understood that Miles, and not McPhearson, would "take his place" and accompany her back to Wichita. Ms. Lewis stated that she first met Miles late in the evening on May 1, 1997, just prior to leaving with him, and her nephew, for Wichita. Ms. Lewis testified that just as they were departing from Miles' apartment for the Los Angeles airport, Miles gave her two baggies of powder cocaine, which she also placed in her girdle. Ms. Lewis recounted the events occurring upon their arrival at Wichita. She was cross-examined about certain letter communications she had with Miles while they were in custody after their arrest at the Wichita airport.

Counsel's initial argument is that the evidence is legally insufficient to support any of Miles' four convictions, although, as indicated, his primary target is Miles' convictions on Counts 1 and 3. Those counts involved the crack cocaine which Ms. Lewis received from McPhearson and carried in her girdle from Los Angeles to the Wichita airport, where she voluntarily gave the crack cocaine, as well as the powder cocaine, which Ms. Lewis testified she received from Miles, to the DEA agents as they were in the process of inspecting her luggage and person. Counsel argues that the government failed to show knowledge or intent by Miles as concerns the two charges involving crack cocaine, suggesting that Miles never knew that Ms. Lewis was carrying crack cocaine on her person, and that his was only "an unwitting association with a pair of sophisticated drug

dealers." According to counsel, Miles was only going to Wichita to "kick it," whatever that may mean, and that Miles was not even aiding or abetting Ms. Lewis and McPhearson. In this regard, counsel in his brief makes no particular mention of Ms. Lewis' testimony concerning her three-party telephone conversation with McPhearson and Miles on April 30, 1997. In this connection, her testimony, as previously stated, was that McPhearson initially intended to accompany Ms. Lewis to Wichita, since she had no money with which to purchase the crack cocaine and McPhearson wanted to make sure that he was paid for the crack cocaine from the proceeds of sales made in Wichita. However, as indicated, this was changed and Ms. Lewis testified that in the three-party telephone call on April 30, 1997, involving herself, McPhearson and Miles, she was introduced to Miles and it was agreed that Miles would accompany her to Wichita and take McPhearson's place, arguably to collect the purchase price from the proceeds of the sales in Wichita.

Without belaboring the point, our study of the trial transcript convinces us that there is sufficient evidence to support the jury's verdict that Miles was guilty on all four counts. As stated, Miles does not really challenge his convictions on the two counts involving cocaine powder. In this regard, Ms. Lewis testified that Miles gave her the cocaine powder. Rather, Miles' insufficiency of the evidence argument is directed to his two convictions relating to the crack cocaine. Ms. Lewis' testimony regarding the three-party telephone conversation involving herself, Miles and McPhearson, indicates guilty

knowledge on the part of Miles as to the crack cocaine. Further, there was corroborating evidence. Miles' fingerprints were found on the packages containing cocaine powder which Ms. Lewis said she received from him. Miles also traveled to Wichita under an assumed name. And, finally, letters from Miles to Ms. Lewis while they both were incarcerated permit an inference of guilty knowledge.[3]

Counsel also argues on appeal that the district court erred in allowing Ms. Lewis to testify, over a general objection, as to statements made to her by McPhearson concerning Miles. Counsel asserts that such constitutes "hearsay" and was inadmissable under Fed. R. Evid. 802. The district court held, after a brief hearing outside the presence of the jury, that such testimony was not hearsay and was admissible under Fed. R. Evid. 801(d)(2)(E). In this regard, counsel, on appeal, complains about Ms. Lewis' testimony in two particulars: (1) that "Miles would be going in his [McPhearson's] place" to Wichita, citing trial transcript pages 96 and 108, and (2) her testimony about statements made by McPhearson which occurred when McPhearson, Lewis and Smiley picked up Miles at the latter's apartment en route to the Los Angeles airport. At that time and place, according to Ms. Lewis, McPhearson protested when Miles said he was taking some powder cocaine

---

[3]A jury may convict a defendant on the uncorroborated testimony of an accomplice. *See United States v. Smith,* 131 F.3d 1392, 1399 (10th Cir. 1997), *cert. denied,* 522 U.S. 1141 (1998); *United States v. Sloan,* 65 F.3d 861, 863 (10th Cir. 1995), *cert. denied,* 516 U.S. 1097 (1996); and *United States v. McGuire,* 27 F.3d 457, 462 (10th Cir. 1994).

with him to Wichita for resale and allegedly said that Miles should not take the powder cocaine to Wichita.

As to the first statement that McPhearson would not himself be going to Wichita and that Miles would be going in his place, our reading of pages 96 and 108 of the trial transcript is that such statement was made by McPhearson in a three-party telephone conversation on April 30, 1997, involving himself, Ms. Lewis and Miles. The second statement complained of by counsel on appeal was made by McPhearson when he learned that Miles proposed to take powder cocaine with him to Wichita. As indicated, Ms. Lewis testified that this particular statement by McPhearson was made directly to Miles and heard by Ms. Lewis.

As indicated, the district court allowed Ms. Lewis to testify as to those statements made by McPhearson relating to Miles under Fed. R. Evid. 801(d)(2)(E). In our view, such statements would appear to also be admissible under Fed. R. Evid. 801(d)(2)(B). As we understand it, the three-party telephone call involved Miles, and the statements later made by McPhearson concerning the powder cocaine were directed to Miles. In any event, under the circumstances there was no reversible error in this regard. *See United States v. Johnson,* 4 F.3d 904, 914 (10th Cir. 1993), *cert. denied,* 510 U.S. 1123 (1994).[4]

---

[4]There is also a suggestion that a very short time prior to the three-party telephone conversation on April 30, 1997, McPhearson, out of the presence of Miles, had told Ms. Lewis that he might not be returning to Wichita with her, and that his brother would. Any possible error in this regard would in our view be harmless, in view of the ensuing three-party telephone conversation of April 30, 1997, in which Miles was himself a participant.

Prior to trial, the government served notice on defense counsel that it intended to introduce evidence at trial that in 1993, Miles had pled guilty to a California state charge involving crack cocaine. A pre-trial hearing on this matter was held, at which time the district court indicated that it would admit such evidence under Fed. R. of Evid. 404(b) as tending to show knowledge and intent on the part of Miles. At trial such evidence was admitted into evidence, and on appeal counsel argues that such was reversible error as to all four convictions. We disagree. Under the rationale of such cases as *United States v. Huddleston,* 485 U.S. 681, 691-2 (1988), *United States v. Viefhaus,* 168 F.3d 392, 397 (10th Cir. ), *cert. denied,* 119 S.Ct. 2402 (1999), *United States v. Russell,* 109 F.3d 1503, 1506-07 (10th Cir.), *cert. denied,* 521 U.S. 1126 (1997), we find no reversible error in this regard.[5]

After trial, but before sentencing, defense counsel asked the district court to reverse Miles' convictions on the grounds that the government had violated the bribery statute 18 U.S.C. § 201(c)(2), by promising leniency to Ms. Lewis in exchange for her testimony at Miles' trial, relying on a panel opinion in *United States v. Singleton,* 144 F.3d 1343 (10th Cir. 1998). On appeal, counsel reargues the matter, although recognizing that the panel's opinion in *Singleton* had, in the meantime, been vacated and the en banc court had held that there had been no violation by the government of the bribery statute. *United States v. Singleton,* 165 F.3d 1297 (10th Cir. 1999). Counsel wanted to preserve the issue since a

---

[5]In *Russell*, we held that evidence of past drug transactions was properly admitted under Fed. R. Evid. 404(b) as tending to show knowledge and intent.

petition for writ of certiorari was then pending in the United States Supreme Court. However, the Supreme Court denied Singleton's petition for writ of certiorari on June 21, 1999.

Judgment affirmed.

Submitted for the court,


Robert H. McWilliams
Senior Circuit Judge