**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DANIEL SHAW,

        Defendant – Appellant.

No. 12-1501
(D.C. No. 1:11-CR-00406-CMA-2)
(D. Colo.)

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DUSTIN PFEIFFER,

        Defendant – Appellant.

No. 12-1502
(D.C. No. 1:11-CR-00406-CMA-3)
(D. Colo.)

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

MANUEL SANTISTEVAN,

        Defendant – Appellant.

No. 12-1510
(D.C. No. 1:11-CR-00406-CMA-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**\*

---

Before **LUCERO**, **MURPHY**, and **PHILLIPS**, Circuit Judges.

---

Appellants Daniel Shaw, Dustin Pfeiffer, and Manuel Santistevan were all charged in the same single-count indictment with aggravated sexual abuse of a fellow federal inmate in violation of 18 U.S.C. § 2241(a)(1). The three were tried together and, after a five-day trial, a jury found them guilty. They now bring separate appeals, which we combined for purposes of oral argument.

Shaw, Pfeiffer, and Santistevan primarily contend that the district court improperly admitted evidence of acts not charged in the indictment. We do not believe the district court abused its discretion in this regard—nor do we find any other basis for reversal. Exercising jurisdiction under 28 U.S.C. §1291, we affirm as to all Appellants.

## BACKGROUND

At all times relevant to this appeal, Shaw, Pfeiffer, and Santistevan were incarcerated at FCI Englewood—a federal correctional institution and detention center in Littleton, Colorado.

---

\* *United States v. Shaw*, No. 12-1501, is submitted on the briefs because those parties waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

In January 2011, a new inmate named Trent Hix arrived at Englewood. The day after his arrival, Shaw, Santistevan, and another inmate entered Hix's cell. The men discussed an "offer of protection" with Hix, which he declined. R. vol. 2, at 204.[1] Santistevan then told Hix he was going to get the protection anyway, and that Hix would have to pay for it by "sucking his dick." *Id*. at 205. Hix again refused, and the three men eventually left.

Two days later, Pfeiffer and another inmate asked Hix to come over so that they could talk to him. At the time, the men were standing outside the cell assigned to Pfeiffer and another relatively new inmate named Ryan Greeves. Like Hix, Greeves had also refused protection, and, later, Shaw had assaulted him on various occasions—accompanied by either Pfeiffer or Santistevan. In fact, Shaw and Pfeiffer had just finished assaulting Greeves when Hix came over and entered the cell.

Shaw and Pfeiffer then began punching and kneeing Hix in the legs and stomach while at least one other inmate held him. Soon after, Santistevan entered the cell and moved Hix towards Pfeiffer's bunk. Greeves left around this time.

According to Hix, another inmate stood guard by the door. Santistevan pulled down Hix's pants and said, "I am going to rape you." R. vol. 2, at 227. Hix could not break free because Pfeiffer and Shaw held him on either side. Hix then felt something

---

[1] All record cites are to the record submitted in *United States v. Santistevan*, No. 12-1510.

being rubbed on his genitals and his backside and something being inserted into his anus. The object was continually thrust into him for approximately one minute.

Afterwards, Hix saw Santistevan wiping his fingers. Santistevan warned Hix that if he gave him instructions to do something in the future he was to comply. Pfeiffer and Shaw told Hix not to take the incident too seriously.

Hix reported the sexual assault the next day. A doctor examined Hix and saw what looked like toothpaste around his anal opening.

In a single-count indictment, a grand jury charged Shaw, Pfeiffer, and Santistevan with aggravated sexual abuse of Hix in violation of 18 U.S.C. § 2241(a) and § 2 (aiding and abetting). Pfeiffer and Santistevan moved for separate trials, but the district court denied the motions and all three men were tried together.

At trial, Hix testified about these events. He also testified about his earlier interaction with Santistevan and Shaw and the offer of protection. Greeves, in turn, testified about being assaulted, sexually and otherwise, a total of four times, including the assault immediately preceding the sexual assault of Hix. Before trial, the district court determined that all of this other-act evidence was admissible under Federal Rule of Evidence 404(b), and that certain acts were also admissible as intrinsic evidence and under Federal Rule of Evidence 413. After a *James* hearing, the district court also ruled that the statements made by Shaw, Pfeiffer, and Santistevan during the commission of these other acts were admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(e).

**DISCUSSION**

Shaw, Pfeiffer, and Santistevan challenge their convictions on various grounds. All three argue that the district court abused its discretion in admitting evidence of other acts involving Hix and Greeves. In addition, both Pfeiffer and Santistevan argue that the district court abused its discretion in denying their motions for separate trials. Pfeiffer alone argues that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland.* And finally, Santistevan alone argues that cumulative error and insufficiency of the evidence both require reversal. We address each of these arguments in turn.

## A. *Admission of other-act evidence*

We review a district court's decision to admit evidence for an abuse of discretion and reverse only if the court's decision was "manifestly erroneous." *United States v. Irving*, 665 F.3d 1184, 1210 (10th Cir. 2011).[2] Even if the district court abused its discretion, this court will "not disturb a jury verdict based on a Rule 404(b) error if it was harmless." *United States v. Caldwell*, 589 F.3d 1323, 1334 (10th Cir. 2009).

Under Federal Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular

---

[2] The government asserts that Santistevan never objected to the admission of other-act evidence at or before trial and that we should review the district court's decision as to him only for plain error. As far as we can tell, it is indeed true that Santistevan never objected to the admission of evidence of other acts he himself committed. Regardless, we elect to apply a uniform abuse-of-discretion standard as to all Appellants because the result remains the same.

occasion the person acted in accordance with the character." But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The standard for satisfying Rule 404(b) admissibility is permissive: "If the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *Irving*, 665 F.3d at 1211.

In the Tenth Circuit, evidence of other acts may be admissible if it satisfies a four-part test: "(1) it must be introduced only for a proper purpose under Federal Rule of Evidence 404(b); (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Federal Rule of Evidence 403; and (4) the district court must, on request, instruct the jury to consider the evidence only for the purpose for which it was admitted." *United States v. Esquivel-Rios*, 725 F.3d 1231, 1240 (10th Cir. 2013). In this case, we conclude that all of the other-act evidence admitted by the district court satisfies this test.

### 1. Offer of protection involving Hix, Shaw, and Santistevan

The government sought to introduce evidence of the encounter in which Santistevan, Shaw, and another inmate approached Hix with an offer of protection. After Hix refused, Santistevan told him that he would have to pay for protection anyway by performing oral sex. Shaw stood watch by the door during the exchange.

In a pretrial ruling, the district court concluded that this evidence was properly admissible against Santistevan and Shaw under Rule 404(b) to show motive. The court believed the evidence had significant probative value given its similarity and close temporal nexus with the charged crime. During the encounter, Santistevan threatened sexual contact and then, just two days later, forced the threatened sexual contact on Hix. While the evidence was prejudicial, the district court did not consider it to be particularly inflammatory or likely to confuse or mislead the jury. The district court further ruled that a limiting instruction would be given to instruct the jury that the evidence was not admitted against Pfeiffer—who was not present during the encounter. At trial, the district court did in fact instruct the jury as promised. It further instructed that evidence that certain defendants may have committed prior similar acts did not necessarily mean that those defendants had committed the crime charged.

We see nothing wrong with the district court's approach to this evidence. Federal Rule of Evidence 404(b) lists motive as a proper purpose for admission, and the incident involving the offer of protection was relevant to proving this purpose. The evidence tended to show that Santistevan had a motive for assaulting Hix after he had threatened to do so just two days prior. Even though Shaw did not voice the threat, the evidence also suggested that he had a motive for participating in the charged assault because Hix had refused the demands of his cohort. The evidence had probative value because the incident involving the offer of protection "was similar to the charged crime and sufficiently close in time." *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000). Both involved

Santistevan and Shaw working together to intimidate by way of forced or threatened sexual activity.

To be sure, this evidence prejudiced both defendants, but we perceive no *unfair* prejudice warranting exclusion under Rule 403. Relevant evidence is usually prejudicial to one side or another. It only becomes unfairly prejudicial when it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Tan*, 254 F.3d 1204, 1211–12 (10th Cir. 2001) (emphasis in original). In this case, we do not believe the district court abused its "considerable discretion" in concluding that the evidence did not provoke this kind of emotional response. *United States v. MacKay,* 715 F.3d 807, 839 (10th Cir. 2013). Any unfair prejudice did not "substantially outweigh the probative value of the evidence. " *Irving*, 665 F.3d at 1214 (emphasis omitted).

Moreover, the danger of unfair prejudice to Santistevan and Shaw was mitigated by the court's limiting instruction. While Shaw generally argues that the court's limiting instructions failed to identify the purpose for which the evidence could be considered, he never challenged the adequacy of the court's instructions at trial—nor did he personally request a limiting instruction from the court with respect to this evidence. Under our four-

part test, a district court is only required to instruct the jury "on request." *Esquivel-Rios*, 725 F.3d at 1240.[3]

### 2. First Greeves assault

The government sought to introduce evidence of the first Greeves assault as evidence of a common plan or scheme and as evidence of motive. This assault occurred when Shaw, Pfeiffer, and another inmate entered Greeves's cell and made him an offer of protection. Like Hix, Greeves declined and the three inmates took turns holding Greeves while the other two beat him.

The district court agreed with the government that this evidence was admissible against Shaw and Pfeiffer under Rule 404(b) to show an overarching plan. The court observed that the assault on Greeves followed the same pattern as the attack on Hix and was related to the charged conduct. While the evidence was prejudicial to Shaw and Pfeiffer, the danger of unfair prejudice did not substantially outweigh its probative value.[4]

---

[3] Pfeiffer was the only defendant to request a limiting instruction with respect to this evidence. Granting the request, the court instructed the jury that the evidence could not be considered against Pfeiffer because he was not present when Santistevan and Shaw first approached Hix. Having received the limiting instruction, Pfeiffer did not object or request anything from the court. Accordingly, to the extent Pfeiffer challenges the court's failure to instruct the jury regarding the limited purpose for which the evidence could be considered, his argument is also without merit.

[4] The court also recognized Rule 403's concerns with "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." R. vol. 2, at 38. The court found that the probative value of all other-act evidence was not substantially outweighed by any of these dangers. From the district court's perspective, there was not a lot of other-act evidence—the government had

(Continued . . .)

The court instructed the jury that evidence of this assault could only be considered against Shaw and Pfeiffer to the extent that it bore on their plan to commit the charged assault—as well as their motive and intent. The court further instructed that because Santistevan was not involved in this assault, the evidence could not be considered against him.

We have consistently held that evidence of a common plan or scheme may be properly admitted under Rule 404(b). *See, e.g., United States v. McGuire*, 27 F.3d 457, 461 (10th Cir. 1994); *United Sates v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982). The other act need not be "identical" to the crime charged; it must only be "similar." *Gutierrez*, 696 F.2d at 755. Here, the first assault on Greeves and the assault on Hix shared several common characteristics: both occurred in January 2011 in the same jail cell, both involved recently admitted inmates who had never been in federal prison, both were preceded by an offer of protection, and both featured Shaw and Pfeiffer as enforcers. So even though the first Greeves assault was not sexual and did not involve Hix, the evidence had probative value because it tended to show a common plan among Shaw and Pfeiffer and an ongoing motive or intent to intimidate and assault targeted inmates. We are not persuaded that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice—particularly in light of the district court's

---

focused on just one prior incident involving the alleged victim (Hix) and on a series of incidents involving another inmate (Greeves). The court also believed that the evidence was sufficiently related to the charged offense that it would not sidetrack the jury or waste time. We generally agree with these observations and find no abuse of discretion.

comprehensive limiting instruction. For these reasons, the district court did not abuse its discretion in admitting this evidence under Rule 404(b).

### 3. Second and third Greeves assaults

The second Greeves assault also involved Shaw and Pfeiffer. Immediately before this assault, Greeves was watching TV with a group of Hispanic inmates known as the "Paises." R. vol. 2, at 381. Upon his return to his cell, Shaw, Pfeiffer, and another inmate cornered Greeves and asked why he was watching TV with that group. The men beat Greeves, and then Pfeiffer and the other inmate held Greeves down while Shaw rubbed Ben Gay on his testicles.

Shaw and Santistevan committed the third Greeves assault shortly afterwards. According to Greeves's testimony, Santistevan overtook Greeves while he was in his cell and bent him over Pfeiffer's bunk. Both Santistevan and Shaw told Greeves to hold still and that Greeves was "going to enjoy this." R. vol. 2, at 383. Shaw then pulled down Greeves's shorts and squirted toothpaste on his backside. Greeves feared that he was going to be raped or that Santistevan would use the soda pop can he had with him to sexually assault him, although this did not occur.

The government sought to introduce evidence of both of these acts for the purpose of showing a common plan.

The district court found the evidence of the second assault admissible against Shaw and Pfeiffer (but not Santistevan) under Rule 404(b) to show common plan—specifically, a common plan to sexually assault and abuse other inmates as punishment

for disobeying the defendants. The court weighed the evidence under Rule 403 and concluded that its probative value was not substantially outweighed by its potential for unfair prejudice. The court gave a limiting instruction that evidence of the second Greeves assault could not be considered against Santistevan and that the evidence could only be considered against Shaw and Pfeiffer for the limited purpose of showing plan, motive, and intent.

Similarly, the court found the evidence of the third assault admissible against Shaw and Santistevan (but not Pfeiffer) under Rule 404(b) to show the same common plan. The court considered this evidence to have particularly high probative value given its similarity to the crime charged. The court again concluded that this probative value was not substantially outweighed by any danger of unfair prejudice. Still, the court sought to limit prejudice by instructing the jury that evidence of prior wrongdoing by Shaw and Santistevan did not mean the men had committed the crime charged. The court also instructed that evidence of the third Greeves assault could not be considered against Pfeiffer.

We see no reason to disturb the district court's exercise of discretion in finding this evidence admissible under Rules 404(b) and 403. The second and third Greeves assaults are arguably even more similar to the charged offense than the first. Beyond the similarities identified above, these assaults were similar to the assault on Hix because all three involved the application of a lubricant to the victim's genital area, bringing sexual

humiliation into the mix of practices the defendants employed to punish new inmates when they refused to pay for protection.[5] We also agree with the district court that evidence of the third assault bore particular resemblance to the assault on Hix. Both involved the application of toothpaste to the victim's backside, and in both instances Santistevan threatened rape as Shaw held the victim down on Pfeiffer's bunk.

At trial, the district court gave limiting instructions regarding both of these other acts to further address any danger of unfair prejudice. While Pfeiffer and Shaw generally challenge the district court's failure to identify the limited purpose for which evidence could be considered, again, under our caselaw, a district court need only give such a limiting instruction "on request." *Esquivel-Rios*, 725 F.3d at 1240; *see United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir. 1991) ("The litigants, not the trial judge, bear the burden to request a limiting instruction."). Here, Shaw made no request for a limiting instruction, and Pfeiffer merely responded in the affirmative when asked by the court if he wanted a limiting instruction with respect to the third Greeves assault (in which Pfeiffer was not a participant). The district court instructed the jury that evidence of the third Greeves assault could not be considered against Pfeiffer, and Pfeiffer did not object or request anything further from the court. Under these circumstances, the district court was not obliged to further instruct the jury sua sponte regarding the limited purposes for which this evidence was admitted.

---

[5] Given that these assaults were sexual in nature, Rule 413 provided another basis for admitting this evidence—as recognized by the district court.

### 4. Fourth Greeves assault

The fourth Greeves assault occurred in Pfeiffer and Greeves's cell just before the assault on Hix. Like the first assault, this assault was not sexual. Shaw fought Greeves, and Pfeiffer grabbed Greeves from behind and "choked [him] out." R. vol. 2, at 389. Afterwards, Greeves heard someone say, "Go get Hix." *Id*. at 390. Greeves then saw Hix enter the room, at which point Shaw and Pfeiffer began to beat him. Just before he left, Greeves saw Santistevan enter the room. The government sought to introduce evidence of the fourth Greeves assault under 404(b) as proof of a common plan.

The district court found that the evidence was admissible against Shaw and Pfeiffer under Rule 404(b) for this purpose.[6] The court found that the evidence had significant probative value given its close temporal proximity to the charged conduct and that the evidence showed an overarching plan to control and punish inmates who refused to trade sexual favors for protection. The court weighed the evidence under Rule 403 and concluded that its probative value was not substantially outweighed by its potential for unfair prejudice. The court gave a limiting instruction that the evidence could only be considered against Pfeiffer, but that evidence that Pfeiffer may have previously committed an act similar to the one charged did not mean that he had necessarily committed the act charged.

---

[6] The district court also concluded that this evidence was admissible as intrinsic to the charged offense. We agree with this conclusion. Because we find the evidence admissible under Rule 404(b), however, we need not separately discuss its admissibility under the more flexible standard for evidence "inextricably intertwined" with the charged

(Continued . . .)

The court's only oversight on this evidence was in instructing the jury that the fourth Greeves assault could be considered against Pfeiffer alone—as opposed to Pfeiffer *and* Shaw. But this oversight only benefitted Shaw—it did not further prejudice Pfeiffer. Also, the district court did not refuse to instruct the jury of the limited purpose for which this evidence was admitted. Neither Shaw nor Santistevan even requested any limiting instruction with respect to this evidence, and Pfeiffer only did so in response to the district court's general inquiry. The court then gave a limiting instruction advising the jury against considering the evidence for improper propensity purposes. Once again, absent any objection or further request from the defendants, we find no fault with the court's instruction.

In sum, the district court did not abuse its discretion in admitting evidence of the incident in which Shaw and Santistevan approached Hix with an offer of protection or any of the four assaults on Greeves. We agree with the district court that this other-act evidence tended to show certain defendants' motive to commit the charged offense as well as a common plan to punish new inmates who refused to pay for the group's offers of protection.[7] While we do not believe that the evidence was all that important to the government's case, we also do not believe it was all that prejudicial. The other-act

conduct. *See Irving*, 665 F.3d at 1212 (recognizing that Rule 404(b) does not apply in this context and that such evidence only remains subject to Rule 403).

[7] Contrary to the position of certain Appellants, there need be no formal conspiracy charge for a district court to admit evidence as probative of a common plan under Rule 404(b) or for a court to conclude a conspiracy existed—as the district court did at the *James* hearing in this case.

testimony was relatively limited (both in duration and in the number of acts described). None of the other acts involved conduct any worse than the conduct charged. And the court's limiting instructions regularly reminded the jury that evidence of a defendant's prior wrongdoing did not mean that the defendant had done wrong again. We have certainly upheld the admission of far more prejudicial evidence in the past.

Because we conclude the district court did not abuse its discretion in admitting all other-act evidence under Rules 404(b) and 403, we need not address Appellants' challenges to the alternate grounds for admission cited by the district court.

### B. *Motions for separate trial*

When two or more defendants have been properly joined in the same indictment, Federal Rule of Criminal Procedure 14 provides that "the court may . . . sever the defendants' trials" if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Here, no one disputes that the defendants were properly joined under Federal Rule of Criminal Procedure 8(b), yet Pfeiffer and Santistevan argue that the district court should have granted their motions for separate trials because evidence of the other acts of their codefendants would not have been admitted had they been tried on their own.[8] "We review the district court's denial of a motion to sever for an abuse of discretion." *United States v. Clark*, 717 F.3d 790, 818 (10th Cir. 2013).

---

[8] Shaw did not move for a separate trial, most likely because it would not have made a difference in his case. He participated in all of the other acts admitted into evidence.

Reversal of a district court's denial of a motion for separate trial is only appropriate if a defendant can establish "actual prejudice" as a result of the denial. *Id.* Under this standard, a defendant must effectively show that he was deprived of his right to a fair trial by being tried with his codefendants. *United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008); *see Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."). Neither Pfeiffer nor Santistevan have made this showing.

Pfeiffer argues that, had he been tried on his own, the encounter involving the offer of protection made to Hix and the third Greeves assault would not have been admitted into evidence because he was not involved in those acts. From his perspective, it was too much to ask the jury to disregard this evidence and the risk of prejudice against him was too high for the court not to grant his motion to sever. Additionally, he argues that Hix's testimony would have been the only direct evidence against him had he been tried separately.

Pfeiffer is correct that those acts would not have been admitted during a separate trial—at least under Rule 404(b). *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and *that the defendant was the actor*."

(emphasis added)). But even assuming this evidence was otherwise inadmissible,[9] we can hardly view testimony of these two other acts as the difference between a fair trial and an unfair one. Had Pfeiffer been tried alone, Greeves could still have testified about being assaulted by Pfeiffer on three separate occasions. And of course, Hix could still have testified about Pfeiffer's role in the charged offense. We see no reason why a jury would have weighed this testimony much differently in the absence of the background evidence regarding the offer of protection and the other Greeves assault. Put another way, we do not believe that the admission of this evidence erroneously led the jury to conclude that Pfeiffer was guilty. *See Zafiro*, 506 U.S. 539. In fact, in multi-defendant cases, we have repeatedly held that one defendant's complaint about the "spillover effect" of evidence properly admitted against a codefendant, without more, fails to rise to the level of actual prejudice. *Clark*, 717 F.3d at 818.

Santistevan's argument is only slightly better. Had he been tried alone, he claims that the first, second, and fourth Greeves assaults would not have been admitted against him. He generally asserts that, because these three other acts were introduced into evidence, he was not judged by his own actions, but by the actions of his codefendants. Santistevan argues that the jury's consideration of these other acts was particularly damaging to him given their similarity to the charged offense.

---

[9] The district court found that evidence of the offer of protection involving Santistevan, Shaw, and Hix was also admissible as intrinsic evidence.

But again, the spillover effect of damaging evidence presented against Shaw and Pfeiffer did not deprive Santistevan of a fair trial. While two of the assaults on Greeves may not have been admitted, evidence of the fourth assault could still have been introduced in a separate trial as intrinsic evidence, and Greeves could still have testified that Santistevan assaulted him on one occasion. (Notably, the district court believed that this assault—the one involving the toothpaste and the pop can—was the *most* similar to the crime charged.) And, of course, regardless of whether Santistevan was tried alone, Hix would still have testified that Santistevan sexually assaulted him.

Even assuming (without granting) that the joint trial created a significant risk of prejudice to either Pfeiffer or Santistevan, "the Supreme Court has recognized that, like the decision to sever itself, tailoring of the relief to be granted, if any, [is left] to the district court's sound discretion." *United States v. Hutchinson*, 573 F.3d 1011, 1026 (10th Cir. 2009) (alteration in original) (quoting *Zafiro*, 506 U.S. at 539) (internal quotation marks omitted). Importantly, in this case, the district court determined that both Pfeiffer and Santistevan were entitled to limiting instructions to protect them from evidence of their codefendants' wrongdoing. In its final instructions, the court also instructed the jury to separately consider the evidence against each Defendant and to return a separate verdict for each. Limiting instructions of this variety are "ordinarily sufficient to cure potential prejudice." *United States v. Hardwell,* 80 F.3d 1471, 1487 (10th Cir. 1996). While we can appreciate that distinguishing among the various assaults would require some attention from the jurors, we presume that they followed the court's cautionary instructions and compartmentalized the evidence as to each of the defendants. *See United*

- 19 -

*States v. Williams,* 897 F.2d 1034, 1037–38 (10th Cir. 1990) (presuming effectiveness of cautionary instruction); *see  United States v. Pinto,* 838 F.2d 426, 434 (10th Cir. 1988) (providing special limiting instruction enables a jury to compartmentalize the evidence).

In conclusion, the district court appropriately weighed any prejudice to Pfeiffer and Santistevan caused by a joint trial against the significant expense and inconvenience of trying them separately. *See United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989) (stating that "the trial judge should balance the prejudice to the defendant caused by a joint trial against the expense and inconvenience of separate trials"). There was no abuse of discretion, particularly given the preference for joint trials in this circuit and others. *See Zafiro*, 506 U.S. at 537 ("There is a preference in the federal system for joint trials of defendants who are indicted together."); *Zapata*, 546 F.3d at 1191 (recognizing that joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts").

## C.  *Brady claim*

Before sentencing, the government submitted a sentencing memorandum containing a prosecutor's characterization of the evidence that Pfeiffer now claims revealed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). According to the prosecutor's characterization, Santistevan "whispered" to Hix that he was going to rape him. Pfeiffer treats this as real evidence and not as a prosecutor's characterization. He believes the whisper is important because it suggests that no one heard Santistevan's

expressed intent—making it less likely that he knowingly aided and abetted in the sexual assault.

"To establish a *Brady* violation, the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009). In this case, we are not persuaded that the government's single characterization of Santistevan's threat as a "whisper" constitutes evidence—let alone suppressed evidence. And, even if Santistevan really did whisper his threat, that is hardly inconsistent with the evidence at trial. Hix testified that Santistevan repeatedly "said" he was going to rape him. R. vol. 2, at 227. He did not specify the volume at which Santistevan spoke, and Pfeiffer's attorney did not solicit this information on cross. In any event, we doubt Santistevan's tone of voice could ever be considered material to Pfeiffer's case given the other evidence presented. After all, Hix testified that Pfeiffer was there, holding him down on a bunk as Santistevan rubbed toothpaste on Hix's backside and then inserted his finger into Hix's anus. Whether or not Pfeiffer heard Santistevan utter his plans, Hix's testimony is enough to support an inference that Pfeiffer knew that a sexual assault was underway.

**D.** *Cumulative error*

Even when individual errors are harmless, their collective effect may require reversal where "the defendant's substantial rights were affected." *United States v. Wood*, 207 F.3d 1222, 1237 (10th Cir. 2000). Santistevan argues that the district court's admission of other-act evidence and its denial of his motion to sever negatively affected

his substantial rights so as to require reversal. As discussed, however, we do not believe the district court erred at all, so there can be no claim of cumulative error under these circumstances.

### E. *Sufficiency of the evidence*

Santistevan generally asserts, without support, that the evidence presented at trial was insufficient to support his conviction. In addressing a sufficiency challenge, this court must "take the evidence—both direct and circumstantial, and reasonable inferences drawn from that evidence—in the light most favorable to the government and ask only whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (internal quotation marks omitted). We review the sufficiency of the evidence to support a conviction de novo. *Id.*.

Here, we have little difficulty concluding that the evidence was sufficient to support Santistevan's conviction of aggravated sexual abuse in violation of 18 U.S.C. § 2241. A person is guilty under that statute if, while "in a Federal prison . . . [he] knowingly causes another person to engage in a sexual act by using force against that person . . . or attempts to do so." 18 U.S.C. § 2241(a). The term *sexual act* includes "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C).

Hix testified that Santistevan pushed him onto a bunk, pulled down his shorts, told him that he was going to rape him, and then penetrated his anal opening with an object

- 22 -

Hix believed to be Santistevan's finger. While Santistevan was outside Hix's direct line of sight during the actual penetration, Hix testified that he saw Santistevan approach him and push him towards Pfeiffer's bunk. Hix testified that he saw Santistevan's ponytail dangling next to him when Santistevan told him that he was going to rape him. And Hix testified that he saw Santistevan wiping his fingers after the assault, at which point Santistevan warned Hix to follow his instructions from then on.

This testimony alone was enough to establish Santistevan's guilt under the statute.

## CONCLUSION

For the reasons stated, we reject the arguments on appeal. The judgment of the district court is AFFIRMED as to all Appellants.

Entered for the Court


Gregory A. Phillips
Circuit Judge